## STEAMBOAT COMPANY v. RAILROAD COMPANY.

1. A navigable river being a public highway, its obstruction is not only a public nuisance for which indictment will lie, but is also ground for a civil action for damages by any person who thereby sustains particular, special, or peculiar injury. In such case, a corporation chartered for purposes of transportation "on and along the rivers of the State," has the same rights as a private individual, and no greater.

2. In action by a steamboat company against a railroad company to recover damages for an obstruction by defendant to the navigation of a river, the complaint alleged as its special injuries: "That by reason of said wrongful and unlawful obstruction, the plaintiff has been prevented from freely navigating the said stream in the usual and ordinary course of its business; has been unable freely to transport freight and passengers on and along the same, as was its right; has been compelled to remove a portion of the upper works of one of its boats in order for it to pass under the said bridge, and then rebuild on the upper side; has been forced to keep and maintain one of such boats permanently above the said bridge, and has sustained loss and other great injury in its business, to its damage ten thousand dollars." *Held,* that the complaint stated no special or particular injury, not common to the public at large, for which a civil action would lie.

3. A point not presented to, nor considered by, the Circuit Judge, is not properly before this court for consideration.

4. Under a statute which requires a railroad company to maintain such a bridge over a navigable river as will permit steamboats to pass, and imposes upon the company the expense which a steamboat may incur in lowering its smoke-stack, &c., so as to enable it to pass under such bridge—a steamboat company has no rights superior to those of a private individual; and under the complaint in this case, framed to recover damages for a special injury resulting from the bridge as an obstruction, the plaintiff is not entitled to the special remedy provided by that statute.

Before HUDSON, J., Richland, July, 1888.

This was an action by the South Carolina Steamboat Company against the South Carolina Railway Company. The judge sustained an oral demurrer to the complaint in the following order:

The motion before me is one to dismiss this complaint because it does not state facts sufficient to constitute a cause of action.

These motions I have been in the habit of regarding as standing on the same footing as motions for non-suit, and not to constitute any part of the pleadings; no pleadings are known to the code except written pleadings. Demurrer must be in writing; but nevertheless a motion of this kind has been by the highest court of the State styled a demurrer, an oral demurrer, and that a judgment upon this demurrer, so-called, is appealable.

The point involved in the motion before me is one of such vital importance to the parties litigant, that I take it for granted that whatever the judgment may be, there will be an appeal to the Supreme Court, and that appeal even noticed orally in court, according to the decision of our Supreme Court, will stay any further proceedings.

The jury are here waiting, and it becomes me that I should dispose of this matter without any further delay. The question is such that I would be glad to have the opportunity to investigate the matter and examine the authorities before me for my own satisfaction, but it is necessary, as I have remarked, to dispose of the matter at once.

Before noticing the point at issue, I will take occasion to say that it is a matter to me of great pleasure and gratification to see the interest that has been aroused amongst our people on the subject of the navigation of our streams, and I hope that interest will not abate, but will continue to grow. It is very important that our rivers shall be kept open, and that the appropriations that are being made for that purpose shall be encouraged, and that everything that can be will be done by the people and by the legislature to keep our streams open. I am really glad that the interest is so deep that it has resulted in actions at law and legislation to force open and keep open the navigable streams of the land—that suits are being instituted for private damages, and that acts are being passed by the legislature. The act passed by the last legislature is a good one, and I hope that it will result in keeping open all the navigable streams of the State.

But what I am called on now to determine is, whether this particular action can be sustained; whether this complaint states facts sufficient to constitute a cause of action. The law in regard to the obstruction of navigable rivers is laid down in the case of

*William Carey* v. *J. S. Brooks*, heard at Edgefield in the fall term of 1833, in which Chancellor Harper delivers the judgment of the Court of Appeal.    From the cases that have been cited by counsel on both sides, the principle laid down here has not been overruled—not even in the 'slightest degree modified.    I am, therefore, bound by the law as laid down in this case—a case in which, so far as I can gather from the argument, the principle involved has been followed in all subsequent adjudications.

Now, that principle in the head-notes of that case is as follows: "In general the remedy for a nuisance on the highway is by indictment, but if by such nuisance a party suffer a particular damage, an action lies, but the damage must be direct, and not consequential."    In that case the party brought an action ; supposing, I take it for granted, that he had suffered a particular damage.    The one who was navigating that stream, floating rafts upon it, just as the plaintiff here navigated or tried to navigate the Congaree River with steamboats, suffered loss from the obstruction in the stream, which was consequent upon said obstruction, and not directly caused by it.    There was nothing in that obstruction which directly caused him to spend the $125 in the removal of the obstruction ; nothing in that obstruction that directly caused him to incur the forfeit to which he was liable for the non-shipment of timber.    Those were losses which were consequent upon the obstruction.

Now, the question is, whether in this case there is any allegation of a damage which is directly caused by the bridge.    If there is, the complaint must be sustained, as one stating facts which will constitute a cause of action ; if not, the motion must prevail. The fact that the plaintiff in this instance happens to be a corporation makes no difference, because no higher rights are accorded this corporation than are enjoyed by all the citizens of the State : every citizen of the State has a right to use a navigable stream— and a public highway—in the manner in which streams are used for the purposes of commerce.    This corporation, the steamboat company, has the privilege of running steamboats upon the various streams of the State, but enjoys in that respect no higher privilege than a private individual.    An individual who is able to

build a steamboat has the right to navigate all navigable streams of the State, and the State could not prevent it.

The allegations of the complaint set forth in substance the fact that there is a plaintiff corporation and a defendant corporation; that the stream is obstructed by the erection of a bridge upon it; that navigation in that way is prevented, not only to the plaintiff, but to all citizens of the State generally who are running steamboats. The eighth paragraph of the complaint is the only one in which it is said that special damage is alleged, and it reads as follows: "That by reason of said wrongful and unlawful obstruction the plaintiffs have been prevented from freely navigating the said stream in the usual and ordinary course of their business; have been unable freely to transport freight and passengers on and along the same, as was their right; have been compelled to remove a portion of the upper works of one of their boats, in order for it to pass under the said bridge, and then rebuild on the upper side; have been forced to keep and maintain one of such boats permanently above the said bridge, and have sustained loss to the great injury in their business to their damage $10,000."

The question is whether that is an allegation of damage special to the plaintiff and caused directly by the obstruction over the stream. In the case of the *Silver Star* the damage was caused directly by the obstruction, because it was a collision between the boat and the bridge. I hold that the allegation of damages here are not special and particular, but appertain to any steamboat company, or any steamboat that will attempt to navigate that stream. The damages are consequent upon the obstruction, and not caused by it. If the allegation had been, in an attempt to pass the bridge, the upper portion of the boat had been knocked off, the smoke-stack or any part of the upper deck, that would have been caused by the bridge; but if the parties voluntarily took away these upper structures that they might get under, and if they keep a boat above the bridge for purposes of navigation and convenience—these are matters which they in their own judgment and according to their own will and determination have resorted to in order to navigate in spite of the obstruction. It is not particular, it is not special, it is not that which is caused directly by the obstruction; and it is not a collision, but it results from

the free will of the steamboat company in its laudable determination to navigate that stream in spite of the bridge. It may be likened to the act of a traveller who, in attempting to pass along a public highway, and in order to get over the obstruction, resorts to measures—probably lightens his vehicle, or makes some change in some part of the vehicle, some special act on his part in order to enable him to surmount the obstruction and go on his way. This is not a special or particular damage, but it is a loss to him or injury to him which is the consequence of the obstruction, just as the injury was to Carey—a consequence of the obstruction on this Horse Creek.

So that, according to my view, there is not an allegation in this case which, under the law in South Carolina, will constitute a cause of action. And this is the turning point in the case. I am satisfied that there will be an appeal (and hope there will be) from this judgment, because it is a matter of too great importance to pass by without getting the judgment of the highest court in the land. From the law that I have before me in the cases cited by counsel in their argument, such is my conclusion. I am free to say, that the question to me personally is a novel one in so far as I have never had occasion to give it special investigation.

I hold, therefore, admitting everything contained in plaintiff's complaint, there are not, under the authority of *Carey* v. *Brooks,* facts stated which are sufficient under our law to give the plaintiff in this case a private action for damages. The complaint, therefore, on that ground is dismissed, because it does not state facts sufficient to constitute a cause of action.  *  *  *

*Ordered,* that for the reasons stated in the opinion of the court herein, the complaint in this cause be and it is hereby dismissed, because it does not contain facts sufficient to constitute a cause of action.

From this order plaintiff appealed.

*Messrs. Smythe & Lee,* for appellants.

*Messrs. Brawley & Barnwell,* contra.

April 6, 1889.  The opinion of the court was delivered by
MR. JUSTICE McIVER.  This was an action to recover dam-

ages for the obstruction of a navigable stream, and as the only question raised by the appeal is whether sufficient facts are stated in the complaint to constitute a cause of action, it will be necessary to make a condensed statement of the allegations found in the complaint. After stating the corporate character of both plaintiffs and defendants, the allegations are that the plaintiffs are engaged in the transportation of passengers and freight on the rivers and waters of this State by means of steamboats, of which they own a large number; that the Congaree River is a navigable stream, and is now, and has been for some time past, actually navigated by steamboats from a point near the city of Columbia to its junction with the Santee River; that the defendants are engaged in running a railroad, and in the prosecution of that enterprise have erected a bridge across the Congaree River, whereby the navigation of that stream is obstructed; that by reason of such obstruction the plaintiffs have been, and are, deprived of the free navigation of said stream; that upon demand the defendants have refused to remove said obstruction, or to so alter and arrange the bridge constituting such obstruction, as to permit the free and unobstructed navigation of said stream. And in the eighth paragraph of the complaint the allegations are as follows: "That by reason of said wrongful and unlawful obstruction, the plaintiffs have been prevented from freely navigating the said stream in the usual and ordinary course of their business; have been unable to freely transport freight and passengers on and along the same, as was their right; have been compelled to remove a portion of the upper works of one of their boats in order for it to pass under the said bridge, and then rebuild on the other side; have been forced to keep and maintain one of such boats permanently above the said bridge, and have sustained loss and other great injury in their business to their damage ten thousand dollars."

The Circuit Judge held that the facts stated in the complaint were not sufficient to constitute a cause of action, and upon that ground rendered judgment dismissing the complaint. From this judgment the plaintiffs appeal upon the several grounds set out in the record, which need not be repeated here; for, as we shall see, there is really but a single question raised by the appeal.

There can be no doubt that the Congaree, being a navigable river, is a public highway, the obstruction of which constitutes a public nuisance, the remedy for which is by indictment, and that remedy, it seems, has already been applied in the case of this obstruction. *State* v. *South Carolina Railway Company*, 28 S. C., 23. It is, however, true that an individual who has sustained any particular, special injury, over and above that sustained by the public generally, as the direct result of such obstruction, may also sustain a civil action to recover damages for such injury. In this respect the plaintiffs, though a chartered corporation, stand upon precisely the same footing as any private individual. Their rights are no greater and no less than those of an individual, and are to be tested by the same principles.

While it seems to be very generally, if not universally, conceded that in order to sustain such an action as this, the plaintiff must allege and prove some special, particular, or peculiar injury beyond that sustained by the public generally, yet it is not to be denied that there is a considerable conflict in the authorities elsewhere as to what will constitute such special, particular, or peculiar injury. Without going here into any detailed examination of the cases in England and other States, many of which we have examined, it seems to us that the true rule to be deduced from them is, that the injury must be particular—as several of the cases express it, "special or peculiar"—must result directly from the obstruction, and not as a secondary consequence thereof, and must differ in kind, and not merely in degree or extent, from that which the general public sustains. This rule is fully supported by what few authorities we have in this State upon the subject.

The case of *Carey* v. *Brooks* (1 Hill 365), upon which the Circuit Judge rested his conclusion, seems to be the leading case in this State. There, as here, the action was brought by a private individual to recover damages for a public nuisance in obstructing the navigation of a navigable stream, under the allegation that the plaintiff had incurred expense in clearing out the channel of the stream, and had suffered loss in transporting his lumber to market under a special contract to deliver it within a speci-

fied time.   But the court, per Harper, J., held that the action could not be sustained because the damage complained of was not such as would justify such an action, quoting the rule as laid down in Bacon's Abridgment, that "a particular damage to maintain this action ought to be direct, and not consequential," adding that "this seems to be the settled law founded on the inconvenience of allowing a separate action to every individual who suffers an inconvenience common to many."

This case, so far from having been modified or shaken by any subsequent case, as contended by the distinguished counsel for appellants, has, we think, been expressly recognized, and must be regarded as furnishing the settled rule in this State.   The first case to which our attention has been called as modifying Carey *v.* Brooks, is *McLauchlin* v. *Railroad Company* (5 Rich., 583), but that case, so far from modifying, expressly recognizes and affirms it.   Wardlaw, J., in delivering the opinion of the court, says (italics being ours): "His complaint is of an unauthorized obstruction of public streets, and *to sustain such a complaint a particular direct damage must be shown,*" citing, amongst other authorities, the case of Carey *v.* Brooks; and we are unable to find a single expression in McLauchlin's case which shows the least dissatisfaction with the rule as laid down in Carey *v.* Brooks.   It will be observed in McLauchlin's case that he claimed that his property lying adjacent to the obstruction complained of had been injured thereby, and if he had succeeded in showing this, he might possibly have recovered upon the ground that this was a special and peculiar damage to his adjacent property, differing in kind from that sustained by the general public and resulting directly from the obstruction complained of, and not a secondary consequence thereof.   It seems to us that Judge Wardlaw, in those portions of his opinion specially relied upon by counsel for appellants, was speaking of this aspect of the case, and the language used by him cannot be regarded as any modification whatever of the case of Carey *v.* Brooks, which he had just cited, as laying down the rule upon which such an action as this rests.

The next case relied on by appellants is *Windham* v. *Rhame*, 11 Rich., 283.   In that case the only question before the court,

and the only one considered was whether vindictive damages could be recovered in an action on the case for special damages incurred by plaintiff by the obstruction of a public highway.    Although the defendant did give notice that he would renew his motion for a non-suit on the ground that the damage proved in the case was not such as would sustain a private action, yet he abandoned that motion in the Court of Appeals, and hence that court had no occasion to consider, and did not consider, the question, and so far as we can discover there is not a word in the opinion which indicates the slightest dissatisfaction with the rule as laid down in Carey *v.* Brooks.

The last case relied on is *Crouch* v. *Railway Company* (21 S. C., 495), but that case is so wholly different from the present that it is difficult to understand how any analogy can be drawn between them.    In that case the action was to recover damages for certain injuries sustained by the plaintiff's steamboat, called the "Silver Star," in passing through the draw of a bridge erected by defendant across a navigable stream.    No such question as is here presented either did, or could have arisen, in that case ; for there the injury was the direct result of the obstruction, the plaintiff's boat having struck against the bridge in passing through the draw, which was alleged to be insufficient.    That case, therefore, fell clearly within the rule.    The injury complained of was special and peculiar to the plaintiff, different in kind from that sustained by the public generally, and was the direct result of the obstruction, and not a mere secondary consequence thereof.    Indeed, the only controversy really made in that case was whether the owner and officers of the Silver Star had been guilty of contributory negligence in attempting to pass through the draw of the bridge.    That case was like the case of a traveller who, in attempting to pass an obstruction in a public highway, is thrown from his horse, or has his vehicle upset and broken or his horses injured, in which case a private action may unquestionably be maintained to recover damages for such injuries, for they are different in kind from those suffered by the general public, and are the direct result of the obstruction.

It is clear, therefore, that the only question in this case is whether the complaint contains any allegation of such special or

particular injury to the plaintiffs resulting directly from the obstruction of the Congaree River, as, under the rule we have stated, is necessary to enable the plaintiffs to maintain such an action as this is.    We agree with the Circuit Judge that there is no such allegation to be found in the complaint.    The wrong of which it complains is a wrong done to the public generally in stopping the navigation of the river, and the plaintiffs have no more right to demand redress for that wrong than any other individual.    They do not allege that any particular injury has been done to them by the defendants, different in kind from that done to the public generally.    The utmost that can be said is, that they allege, in the eighth paragraph of their complaint, that with a view to obviate the injury which they, in common with the public, suffer from this public wrong of the defendants, they have voluntarily incurred certain expenses, and for this they claim damages from the defendants.    But this is not the direct result of the obstruction, and at most is only a secondary consequence thereof, and cannot, therefore, be regarded as a sufficient basis for this action.    If the fact that Carey had incurred expenses in attempting to remove the obstruction caused by the act of Brooks, was held insufficient to enable him to maintain his action, we do not see how the fact that plaintiffs have incurred expenses in refitting their boats can entitle them to recover in this action.

The point raised in the argument as to the effect of the act of 1852,[1] is not properly before us, as no such point was presented

---

[1] 12 Statutes at Large, page 177, which reads as follows :

"Whereas the public interest is concerned in the ready and safe passage over the Congaree River, as well as in the navigation of the same, and a secure passage over the said river by bridge interferes with the uninterrupted navigation thereof by steamboats with chimneys of great height, unless means be taken to reduce the height of such chimneys by hinges, to be used as occasion may require ; therefore

"I. *Be it enacted* by the senate and house of representatives, now met and sitting in general assembly, and by the authority of the same, that it shall and may be lawful for the South Carolina Railroad Company to construct a bridge over the Congaree River where it is intersected by the railroad, although the said bridge be not of sufficient elevation to permit steamboats to pass without lowering their smoke-stacks : *Provided*, that the said bridge be at least forty-two feet above the bed of the river :  *And provided, also*, that the said company shall satisfy and pay all the expense which any steamboat may incur by reason of any alterations which may be rendered necessary by this act, and by the necessity of lowering the smoke-stack of such steamer, by the use of hinges or by any other manual

to, or considered by, the Circuit Judge. The only question which he was called upon to decide was whether the facts stated in the complaint were sufficient to constitute a cause of action, and his judgment upon that question is all that we are entitled to review. We may add, however, that even were the point properly before us, we do not think it would avail the plaintiffs. The case, as made by the complaint, is not such a case as would entitle the plaintiffs to the special remedy provided by the act; and certainly there is nothing in the act which would give these plaintiffs any rights superior to those of any private individual in bringing such an action as that now under consideration.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

---

contrivance: *Provided, also,* that the said railroad company shall transport guano and agricultural plaster of paris at a rate not exceeding twelve and a half cents per hundred pounds to Camden, Columbia, and Hamburg, and at the same rate to all intermediate stations."