## JONES v. SEABOARD AIR LINE RY. CO.

1. HIGHWAYS — STREAMS — RAILROADS — BRIDGES — FRESHET WATERS— DAMAGES.—The owner of land on a navigable stream has the right to the unmolested use of the same to the bank, and may maintain an action against a railroad company for causing damages to same by obstructing flow of freshet waters by negligent construction of piers for bridge. *Steamboat Co.* v. *R. R.,* 30 S. C., 539, *distinguished from this.*

2. BRIDGES—RAILROADS—DAMAGES—DEEDS—RIGHT OF WAY.—GRANTOR to a railroad company of a right of way must be held to have had in view all damage resulting to his property from a reasonably skilful and proper construction of a bridge; but not from its construction in any manner thought best by the company if construction was not unreasonable, and not the angle to the course of the water at which the piers were afterwards built; but in case of construction with reasonable care which proves defective and causes injury to grantor, it is duty of company to use reasonable care and skill to prevent injury to grantor, and it is liable for injury so occasioned.

3. RAILROADS—NUISANCE.—A railroad company consolidating with another under the laws of this State is liable for damages from a nuisance erected by the first and continued by the consolidated company without notice and demand for removal.

4. HIGHWAYS—STREAMS—BRIDGES.—Precautions required of and liability of persons building bridges across streams, stated.

5. SURFACE WATER.—FRESHET WATERS of a river out of its banks, which will return, is not surface water.

6. STREAMS—BRIDGES—FRESHET WATERS—EVIDENCE—EXPERT OPINION. —A witness cannot give an opinion as to effect of piers or dams on freshet waters at a particular point in a river unless he is shown to have special knowledge on the subject and of the conditions at the point.

7. CHARGE—REQUESTS.—It is duty of trial Judge to charge or refuse to charge requests submitted.

8. EVIDENCE.—THE BURDEN of proving an affirmative defense that the damage to lands was caused by unprecedented floods is on defendant.

9. RAILROADS—DAMAGES—BRIDGES.—Railroad company is liable for such damages to lands caused by unprecedented floods as would not have occurred except for negligent construction of its bridge.

Before IZLAR, special Judge, Kershaw, December, 1902. Affirmed.

Action by Wiley L. Jones, Oliver P. Jones and Jno. J. Jones against Seaboard Air Line Railway. From judgment for plaintiff, defendant appeals on the follwing exceptions:

"1. Because upon the motion for a nonsuit his Honor, the presiding Judge, should have taken judicial cognizance of the fact that the Wateree River is a navigable stream, so declared· by the act of 1753, and should have held that the obstruction, if unlawful, would constitute a public nuisance, and that no action could be maintained by the plaintiffs, whose injuries, as alleged, differ in degree only, and not in kind, from those of others along the stream; and should have granted the nonsuit.

"2. Because upon the motion for a nonsuit, it being in proof by the plaintiffs' testimony that the right of way was granted for valuable consideration by the plaintiffs themselves to the South Bound Railroad Company for its track and bridge, his Honor should have held that the law presumes that they, the plaintiffs, contemplated the right of said company to erect its piers and bridges in any manner it thought best, provided it was not unusual, and should have held that the plaintiffs having so conveyed the right of way, are held to have known the use that was to be made of it and the angle on which the bridge should cross the river, and to have assumed all risks incident to the location of the piers in the usual way for such bridge, and there being no testimony to show that the piers were located in an unusual angle to the current of the river, his Honor should have granted the nonsuit.

"3. Because upon the motion for a nonsuit it appears that the cribs in the stream were alleged and proven to have been built by the South Bound Railroad Co. and abandoned. His Honor should have held that the defendant could not be held for the consequences of allowing such piers to remain on its right of way until after demand for removal and refusal, of which there was neither allegation nor proof, and his Honor should have granted the nonsuit.

"4. Because upon the motion for a nonsuit it appears that

the piers themselves were erected by the South Bound Railroad Co., his Honor should have held that the defendant could not be held for the consequences of allowing them to remain on its right of way until after demand for removal and refusal, and of which there was neither allegation nor proof, and his Honor should have granted the nonsuit.

"5. Because upon the motion for a nonsuit his Honor should have held that flood waters are considered a common enemy, and the defendant could not be held liable for damages resulting from the erection of the piers at such angle as did not result in the diversion of the water in the channel of the stream, even if they did cause a diversion of the water at unusual heights or floods, and should have granted the nonsuit.

"6. Because upon the examination of the witness, B. B. Williams, in behalf of the defendant upon the objection of the plaintiff, his Honor refused to allow the witness to testify in response to the question as to erosions above the bridge as follows, to wit: 'To what extent are these erosions?' The said question being intended to show that the freshets which are alleged to have caused the damage to plaintiffs' lands had caused similar damages above the bridge; therefore, that the action of the river below the bridge had not been affected by the piers or cribs.

"7. Because upon the examination of the witness, F. H. Barber, offered on behalf of the defendant, upon objection of the plaintiffs, his Honor refused to allow the witness to testify as to the effect of the freshet of May, 1901, on the bottom lands along the Catawba River in York County, said Catawba River being the same stream as the Wateree River, and it being the same freshet which it was alleged had caused the damage to plaintiffs' lands in Kershaw County.

"8. Because upon the examination of the witness, F. H. Barber, on behalf of the defendant, upon objection of the plaintiffs, his Honor, the presiding Judge, refused to allow the witness, who had stated his means of knowledge and of

forming an opinion, to testify in response to the question, 'Do you think the water was thrown on that land by the obstruction afforded by the piers?'

"9. Because his Honor charged the jury as follows, to wit: 'One whose lands are overflowed and injured by reason of sand, timber and trees uprooted and carried thereon, in consequence of the manner in which a railroad company builds a bridge across a natural stream or river, whereby the waters of the stream are contracted and diverted from their natural channel or course, and made to flow in the different direction from that which they were accustomed to do before the building the bridge and the obstruction of the stream by the piers thereof, and by allowing and permitting other obstructions built for temporary purposes to remain in the river and further obstruct the flow of the waters, may maintain an action against such railroad company for the injuries which he has sustained, as the company is presumed to know the habits of the stream, on extraordinary occasions, as well as ordinary occasions;' thereby indicating to the jury that, even though the railroad company might have been authorized under the laws of the State and United States to build such bridge, and even though it might be necessary to erect piers in the bed of the stream, and even though they were properly erected, the landowner unavoidably injured thereby would have his cause of action.

"10. Because his Honor charged the jury as follows, to wit: 'If the injury here complained of was caused by an extraordinary freshet, which could not be foreseen and provided against—in other words, was the act of God, and such act was the sole cause of the injury—then the proof of the fact would be a perfect shield, and the plaintiffs could not recover. But if the jury find from the testimony that there was negligence on the part of the defendant, which, if it had not been present, the injury would not have happened, notwithstanding the act of God in sending an extraordinary freshet in the Wateree River, the defendant would be

responsible; and the burden is on the defendant to show, not only that the extraordinary freshet—or, in other words, the act of God—was the cause, but that it was the entire cause. For as said in one of our cases, "It is only when the act of God is the entire cause" that the defendant can be shielded,' thereby indicating that the burden of proof was on the defendant to show, not only that the extraordinary freshet was the cause, but that it was the entire cause, of the injury to plaintiffs' lands; whereas, defendant submits, it being only a question as to what was the cause of injury and not a question of the exemption of the defendant from some duty or obligation imposed upon him by law or contract, the burden was on the plaintiffs to show that the injury was caused by the negligence of defendant and not by the act of God.

"11. Because his Honor charged the jury as follows, to wit: 'The same principle, as decided in that case, is applicable here. The onus, then, is upon the defendant to prove the absence of negligence, unless, as I have charged you, that the proof satisfies your minds that the act of God in sending an extraordinary freshet was the entire cause of the injury. to the plaintiffs' lands, which, if so, would, of course, in itself show the absence of negligence,' thereby indicating that the burden of the proof was on the defendant, when, as claimed in the preceding exception, it was on the plaintiffs.

"12. Because his Honor charged the jury as follows, to wit: 'A railroad company in constructing its road over a natural stream, natural water course, should have openings sufficient to afford a free outlet or passage for all water, as well in times of ordinary freshets or floods and freshets as at other times, and the railroad company is not only liable in damages to persons injured by obstructions placed in a natural water course and there maintained, or there negligently allowed to remain, but also for damages resulting from diverting the natural course of the stream,' thereby indicating that the defendant would be liable not only for damages caused by obstructions negligently placed or main-

tained in the stream, but also for damages resulting from the unavoidable diverting of the natural course of the stream.

"13. Because his Honor charged the jury as follows, to wit: 'Although the railroad company constructed its. piers and bridge prudently and in a scientific manner, yet, if the testimony satisfies your minds that it subsequently appeared that the construction was such that damages would result from the bridge and piers, and the railroad company could have averted this damage by reasonable effort, nevertheless failed to do so, it would, in my opinion, be liable,' thereby indicating that the defendant would be liable for damages resulting from the construction of its piers and bridge, although the same were constructed prudently and in a scientific manner, where it subsequently appeared that the construction was such that damages would result from the bridge and piers.

"14. Because his Honor charged the jury as follows, to wit: 'A railroad company, as I understand the law, is bound to provide in the construction of its road against all injury and damages arising from ordinary floods and freshets. It is only relieved from its liability when it is shown that the flood or freshet was an unusual or extraordinary one—in other words, that it was the act of God—an act which could not have been anticipated and provided against,' thereby indicating that the railroad company was a warrantor against all damages arising from ordinary floods and freshets, and could only be relieved from liability when it is shown that the flood or freshet was the act of God.

"15. Because his Honor charged the jury as follows, to wit: 'But if the railroad company suffers a nuisance to be created or continue it on its premises, in the pursuit of business for its benefit, when such railroad company has the power to prevent or abate it, it would be liable for any injury resulting therefrom,' thereby indicating that the railroad company would be liable to an individual injured by a nuisance placed on its premises by a predecessor and

allowed to remain there, although no demand for removal
was made or refused.

"16. Because his Honor charged the jury as follows, to
wit: 'Now I have been requested by both sides to charge
you certain requests, both for the plaintiffs and the defend-
ant. You have heard these requests read. I have given
you in my general charge what I consider to be the law in
this case; and in so far as the requests submitted by the
plaintiffs and the defendant are consistent with my general
charge, I charge them to you, and those which are inconsist-
ent and conflict with my general charge, I refuse to charge
them to you;' thereby leaving it to the jury to determine for
themselves whether the requests to charge submitted by the
plaintiffs and the defendant were consistent as a matter of
law with the charge delivered by his Honor, and the de-
fendant submits that it had a legal right to have its requests
to charge stated to the jury, and to have it stated whether
they were allowed or not.

"17. Because his Honor refused to charge defendants'
second request to charge as follows, to wit: 'That the effect
of the two deeds introduced in evidence by the plaintiffs
without objection, one of them from Wylie Jones, Oliver P.
Jones and J. N. Jones to the South Bound Railroad Com-
pany, the other from J. K. Jones to the same company, was
to convey to said South Bound Railroad Company all of the
estate in said strips of land which they or any of them had
for the purposes of said railroad company.'

"18. Because his Honor refused to charge defendants'
third request to charge as follows, to wit: 'That when per-
sons for valuable consideration convey a strip of land to a
railroad company for the purpose of building a track and
bridge on it, they are held to have contemplated all damages
which might result to the remainder of their property by any
bridge built in a usual and proper manner, and cannot re-
cover damages for injuries resulting from a bridge so built.'

"19. Because his Honor refused to charge defendants'
fourth request to charge as follows, to wit: 'That the plain-

tiffs do allege that the South Bound Railroad Company in constructing the four piers for its permanent bridge was negligent and careless in this, that it located said piers with the broad sides thereof at such an oblique angle to the natural course of the stream as to present a much greater surface and obstruction to the current of the stream than was necessary or proper, and this allegation being denied by the answer, the plaintiffs are bound to prove by a preponderance of the testimony that it was not necessary or proper so to locate said piers.'

"20. Because his Honor refused to charge defendants' fifth request to charge as follows, to wit: 'That to establish negligence under such an allegation, the plaintiffs must prove by a preponderance of the testimony that such location was not only not necessary and not proper, but that the danger of such a result as is alleged to have happened was known to the agents of the company building the bridge, or that it was so apparent that a reasonable man would have foreseen the result.'

"21. Because his Honor refused to charge defendant's sixth request to charge as follows, to wit: 'That when a party who has conveyed a strip of land to a railroad company for the building of a railroad track and bridge, knows the character of the river and the dangers from freshets, and is present during the building of piers for such bridge and sees the angle at which they are placed to the current of the river, is as much bound as the parties building the piers to foresee dangers to his own lands from such location apparent to reasonable men, and should warn the parties so building the piers, and if he fails to do so and allows the company to proceed with the building of such piers and to incur heavy expense in building a bridge thereon, he cannot claim damages from injuries subsequently resulting therefrom.'

"22. Because his Honor refused to charge defendant's seventh request to charge as follows, to wit: 'That the agents of a railroad company engaged in the location of piers for a bridge across a river are not bound to anticipate the effects

which would result from such location on an unprecedented freshet, which is considered the act of God.'

"23. Because his Honor refused to charge defendant's eighth request to charge as follows, to wit: 'That if a wash across the bank on plaintiffs' land was commenced by an unprecedented freshet and subsequently widened and deepened by other freshets, and·the alleged damage resulting therefrom, and would not have occurred but for such unprecedented freshet, the plaintiffs could not recover in this action.'

"24. Because his Honor refused to charge the defendant's ninth request to charge as follows, to wit: 'That if the jury believe that the washing of plaintiffs' lands was started by the trampling of the banks, the hauling or the handling of logs or other material thereon, or by the clearing of the banks, or by the cutting thereof for the bridge, and that the damages to the plaintiffs' lands resulted therefrom, they cannot find for the plaintiffs, and the burden is on the plaintiffs to prove by a preponderance of the evidence that such washing was not so started and such damages not caused thereby.'

"25. Because his Honor refused to charge the defendants' tenth request to charge as follows, to wit: 'That it is not alleged in the complaint that the original building of the cribs for the temporary bridge was unnecessary or improper, and the jury must assume that such building was rightful, and the plaintiff must prove by the preponderance of the testimony when they ceased to be necessary or proper, and that the alleged damages resulted subsequently thereto.'

"26. Because his Honor refused to charge the defendant's eleventh request to charge as follows, to wit: 'That when cribs·are rightfully put into a navigable stream by one corporation and subsequently become unnecessary, demand for a removal thereof and a failure so to do must be alleged and proven before a corporation succeeding to the rights and liabilities of the first corporation can be held liable for damages resulting from the presence of such cribs in the river.'

"27. Because his Honor refused to charge the defendant's

twelfth request to charge as follows, to wit: 'That the waters of an unprecedented freshet are considered a common enemy, and a railroad company cannot be held responsible for not having anticipated such a freshet or not having protected adjoining lands from the effects thereof.'

"28. Because his Honor refused to charge defendant's thirteenth request to charge as follows, to wit: 'That plaintiffs cannot recover in this action for damages to growing crops on the land in question which belonged to J. N. Jones.' "

*Messrs. W. H. Lyles* and *W. M. Shannon,* for appellant. *Mr. Lyles* cites: *Consideration of right of way is presumed to cover all damages:* 47 S. C., 485; 111 Ill., 363. *No notice or demand for removal:* 47 S. C., 464. *Unprecedented freshet is act of God, and burden of showing damage therefrom by construction of piers is on plaintiff:* 29 S. C., 101; 1 Ency., 2 ed., 584; 7 Rich. L., 409; Thom. on Neg., sec. 72; 10 F. R., 441; 36 Mo. App., 476; 96 Pa. St., 65; 67 Cal., 607.

*Messrs. T. J. Kirkland, M. L. Smith* and *C. C. Moore,* contra. *Mr. Kirkland* cites: *Defendant having set up defense of unprecedented freshet, act of God, burden is on it:* 52 S. C., 279; 29 S. C., 96; 1 Ency., 2 ed., 592; 26 S. C., 258. *Defendant is liable for damages from obstructing water course without reference to negligent construction:* Code, 1902, 2041; 21 Ency. P. & P., 226; 14 Id., 336; 34 S. C., 62; 47 S. C., 469, 485; 42 S. C., 402.

*Mr. Smith* cites: *Plaintiffs may maintain this action:* 30 S. C., 539; 1 Hill, 365; 5 Rich., 583; 21 S. C., 495; 54 S. C., 242; 21 Ency., 2 ed., 714-5; 64 S. C., 120. *As to liability of defendant for continuing the obstruction:* 47 S. C., 484; 55 Ia., 170; 25 S. C., 24. *And no notice and demand for removal are necessary:* 16 S. C., 587; 47 S. C., 464; 52 S. C., 404; 54 S. C., 98; 58 S. C., 357; 6 Ency., 801-2; 62 F.

R., 678; Code, 1902, 2053; 64 S. C., 92; 178 Mass., 566; 21 Ency., 721; Code, 1902, 2041; 56 S. C., 534; 63 S. C., 568; 24 Ency., 896; 61 S. C., 552. *Is freshet water surface water?* 39 S. C., 472; 54 S. C., 242; 62 S. C., 25, 62; 86 N. Y., 140; 24 Ency., 903; 63 S. C., 120; 40 O. St., 582. *Evidence offered as to damages by flood at other points properly excluded:* 78 Tex., 279; 13 Ency., 716-7; 32 S. C., 129; 59 S. C., 311; 62 S. C., 281. *Defendant is liable for negligent maintenance:* 28 S. C., 23; 67 Miss., 28. *Plaintiffs are not required to take notice of method of construction:* 1 Ency., 2 ed., 75; 21 Ency., 2 ed., 723.

July 21, 1903. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The South Bound Railroad Company in building its road from Camden to Columbia constructed a temporary bridge across the Wateree River at Camden, and subsequently replaced it with a permanent bridge resting on stone piers. The plaintiffs made a deed to the railroad company for a right of way over their lands to the river. In 1901, the South Bound Railroad Company was merged into the Seaboard Air Line Railway by consolidation. This action is brought against the Seaboard Air Line Railway for damages and injunction. The grounds of the complaint are, that the defendant has negligently allowed to remain in the river and obstruct it a number of large pens or cribs, filled with rock, which were used in building the temporary bridge and which are now useless to defendant; and that the South Bound Railroad Company negligently constructed the stone piers of the permanent bridge, and that it located them at so oblique an angle to the natural flow of the stream as to present a much greater surface and obstruction to the current than is necessary or proper. From these two causes the plaintiffs claim the flood water of the river has been deflected from its natural flow and thrown with much more than its natural force and volume on their adjacent lands, tearing down the banks, scour-

ing off and excavating their soil, covering it with sand and silt, destroying their crops and grass thereon, and subjecting their valuable bottom land to such an increased force of current in ordinary floods as to render a part almost worthless and the remainder much more unsafe and less available for planting, pasturage and other purposes of agriculture, to their damage $2,000. Plaintiffs alleged the defendant in consolidating with the South Bound Railroad Company assumed all its duties and liabilities, and this the answer admits. The defendant denies the negligence charged, and alleges the railroad bridge and the piers which support it are built in a correct and scientific manner, and could not have been built in any other manner. The defendant sets up the defense that the damage, if any, alleged by the plaintiffs was caused by the unusually frequent and unusually high freshets in the Wateree River. At the conclusion of the testimony offered by the plaintiffs, defendant moved for a nonsuit. The motion was refused and the case proceeded to its close. The jury found for the plaintiffs $1,000, and defendant appeals upon a number of exceptions, assigning error in the refusal to grant a nonsuit, in the admission of testimony, and in the charge to the jury.

We shall first consider the grounds of the motion for a nonsuit, which are as follows:

"1. It is clear that no claim for damages to growing crops can be allowed, as it is shown that the land is cultivated and the crops owned by J. N. Jones, not by the plaintiffs.

"2. The Court will take judicial cognizance of the fact that the Wateree River is a navigable stream. It was made such by the act of 1753.

"3. The stream being a navigable one, the obstructions, if unlawful, would constitute a public nuisance, and no action can be maintained by the plaintiffs, whose injuries as alleged differ in degree only and not in kind from those of others along the stream.

"4. It is in proof by plaintiffs' testimony that the right

of way was granted by the plaintiffs themselves to the South Bound Railroad Company for its track and bridge, and the law presumes that they contemplated the right of said company to erect its piers and bridge in any manner that it thought best, provided that it was not unusual.

"5. Having so conveyed the right of way, plaintiffs are held to have known the use that was to be made of it and the angle at which the bridge would cross the river, and to have assumed all risk incident to the location of the piers in the usual way for such bridge.

"6. There is no testimony tending to show that the piers were located in an unusual manner or at an unusual angle to the current of the river.

"7. The cribs in the stream are alleged and proven to have been built by the South Bound Railroad Company and abandoned, and the defendant cannot be held for the consequences of allowing them to remain on its right of way until after demand for removal and refusal, of which there is neither allegation nor proof.

"8. The piers themselves having been erected by the South Bound Railroad Company, the defendant cannot be held for the consequences of allowing them to remain on its right of way until after demand for removal and refusal, of which there is neither allegation or proof.

"9. Flood waters are considered a common enemy, and the defendant cannot be held liable for damages resulting from the erection of the piers at such angle as did not result in the diversion of the waters in the channel of the stream, even if they did cause a diversion at unusual heights of floods."

The nonsuit could not be granted on the first ground because there was evidence tending to show damage to the land as well as the crops. Every riparian owner has rights with respect to a navigable stream, in addition to his right in common with the public to unobstructed navigation. One of these is the right to have free access to the stream over his own lands and the undisturbed

13—67

use of these lands. *Yates* v. *Milwaukee,* 10 Wall., 497; *St. Louis* v. *Rutz,* 138 U. S., 246; *Miller* v. *Mendenhall,* 43 Minn., 95 (19 Am. St. Rep., 233, note); *Rumsey* v. *R. R. Co.,* 133 N. Y., 79; *Jonesville* v. *Carpenter,* 77 Wis., 288; 21 Am. & Eng. Ency. Law, 438. This right has been denied by some courts, but it is sustained by the great weight of authority. It is subject, however, to the right of the State to improve and develop navigation, but it cannot be impaired by railroad companies for their corporate purposes without compensation to the owner. *Sage* v. *Mayor,* 154 N. Y., 61. The right which the plaintiff says the defendant invaded was not the right of navigation, or any other right which he held in common with the public, but the right to the unimpaired use of his land on the banks of the river. The fact that the stream was navigable does not affect this question. *Blood* v. *R. R. Co.* (Mass.), 61 Am. Decis., 446. The injury alleged is different in degree and kind from any done to the public, and, therefore, does not fall within the reason of *Steamboat Co.* v. *R. R. Co.,* 30 S. C., 539, 9 S. E., 650, and other like cases. For these reasons the defendant's second and third grounds of nonsuit cannot be sustained.

The fourth, fifth and sixth grounds will be considered together. The plaintiffs, in giving a deed for a right of way over their lands, must be held to have had in view all damage coming to their property from a reasonably skillful and proper construction of the bridge. *Wallace* v. *R. R. Co.,* 34 S. C., 66, 12 S. E., 815; *Leitzsey* v. *Water Power Co.,* 47 S. C., 464, 25 S. E., 744; *Nunnamaker* v. *Water Power Co.,* 47 S. C., 487, 25 S. E., 751. We know of no authority for the proposition that the conveyance of a right of way authorized the railroad company to build the bridge in any manner it thought best, if the method of construction was not unusual. The question is, taking into consideration all the circumstances, such as the current of the river, the topography of the country, etc., was the bridge built with reasonable skill and reasonable precaution to avoid injury to others? Upon this issue there was

evidence offered for the consideration of the jury. The true criterion is found, not in the prudence and skill that are usually exercised, but in that which ought to be exercised. *Bridger* v. *R. R. Co.*, 25 S. C., 30; *Cooper* v. *Mills Co.*, 69 Iowa, 350. In the recent case of *Bodie* v. *Ry. Co.*, 66 S. C., 302, which was an action brought against a railroad company by an employee for injury from negligence in failure to furnish a requisite force of hands to do special work, this Court decided that it was competent to show the usual method on that and other roads of doing the same work, but the testimony was admissible solely on the ground that it furnished some proof as to what was the proper method of doing such work, and not as fixing the standard of care to be exercised in its performance. Though not involved in the motion for nonsuit, it is proper to consider in this connection the proposition stated by the presiding Judge in his charge, which forms the ground of the thirteenth exception: "Although the railroad company constructed its piers and bridge prudently and in a scientific manner, yet, if the testimony satisfies your minds that it subsequently appeared that the construction was such that damages would result from the bridge and piers, and the railroad company could have averted this damage by reasonable effort, nevertheless failed to do so, it would, in my opinion, be liable." This obligation flows from the duty imposed upon all to so use their own property as not to injure others. Even with the exercise of the utmost care and skill in the construction of bridges, culverts, dams and drains, great mistakes may be and are sometimes made, by reason of which unexpected injury results to others. In such a case it is fair and just that those who make the mistake should be required, after it has become manifest, to use reasonable care and skill to prevent its consequences falling on others, especially when they were only required to use reasonable care and skill in the construction. 4 Am. & Eng. Ency., 940; 13 Idem., 692. The position taken that plaintiffs must be held as a matter of law to have known the angle at which the railroad would

cross the stream and the position of the piers in the water, is not sound. Actual proof that plaintiffs knew the intention of the railroad in this respect when they made the deed would have been a strong defense. One who conveys a right of way to a railroad company is not, however, charged, as defendant insists in the twenty-first exception, with the knowledge and skill requisite to enable him to warn the bridge builder that the methods used in the construction of the bridge is not proper and safe. Aside from this, the defendant in pressing the motion for nonsuit on this ground loses sight of the cribs or pens of rocks. It certainly could not be contended that the plaintiffs had any reason to anticipate these would be left in the river.

The seventh and eighth grounds of the motion involve the proposition that both the cribs and the piers were erected by the South Bound Railroad Company, and the defendant, Seaboard Air Line Railway, cannot be held for the consequences of allowing them to remain as they were left by the former corporation until demand for removal and refusal, of which no proof was offered. The doctrine is established by an unbroken line of authority that a party who is not the original creator of the nuisance must have notice of it and be requested to remove it before action can be brought against him. *Hammond* v. *R. R. Co.,* 16 S. C., 567; *Townes* v. *City Council,* 52 S. C., 404, 29 S. E., 851; *Leitzsey* v. *Water Power Co.,* 47 S. C., 464, 25 S. E., 744. This doctrine, however, does not apply to the case now under consideration. After setting forth the liabilities incurred by the South Bound Railroad Company to them, the plaintiffs allege, in the ninth paragraph of the complaint: • "That on or about the        day of May, A. D. 1901, the aforesaid Seaboard Air Line Railway, being thereunto authorized by the laws of South Carolina, did merge and consolidate its capital stock, franchises and property with those of the South Bound Railroad Company, thereby forming a new corporation under the laws of South Carolina by name of Seaboard Air Line Railway, the defendant herein, becom-

ing the owner of the franchises and property and subject to all the duties and liabilities of the said South Bound Railroad Company, and a corporation under the laws of South Carolina, as plaintiffs are informed and believe." This allegation is admitted in the answer without qualification. The admission must be referred to the liabilities of the South Bound Railroad Company alleged in the complaint, and clearly shuts off the defendant from asserting anything with respect to the liabilities of the South Bound Railroad Company, which that company could not itself set up. This admission was properly made, because in case of consolidation the statute law of the State imposes upon the new company "all debts, liabilities and duties" of any company entering the consolidation, and provides that they shall be enforced against the new company "to the same extent as if said debts, liabilities and duties had been incurred or contracted by it."

Perusal of the evidence offered by plaintiffs leads to the clear conviction that in 1901 and 1902 the floods in the Wateree River were unusually great and unusually frequent. There was testimony to the effect, however, that the floods under thirty feet were not unusual floods, and that damage resulted to plaintiffs' land from water thrown upon it by the piers and cribs when the floods were below that height, as, for instance, in the freshet of February, 1902, when the water was twenty-eight feet. Besides, it is not sufficient to exempt the defendant from liability that the damage should have come from its diversion of the water at "unusual heights of floods." The rule is that whoever proposes to build a bridge over a stream, before placing his piers or other erection tending in any degree to dam the water or divert it from its natural flow, must study the country through which it flows, its usual freshets, and occasional great floods, which are not usual but which experience teaches may occur at any time, and use reasonable care and skill to avoid producing or increasing damage from these sources. He is not required to anticipate and use

precautions against extraordinary or unprecedented floods. Whether a flood falls within one or the other of these classes is a question of fact, and where there is any conflicting evidence the issue can only be decided by a jury. *Ry. Co.* v. *Millman,* 143 Ill., 127, note; Am. St. Rep., 366; 13 Am. & Eng. Ency., 690; *R. R. Co.* v. *Gilleland,* 56 Pa., 445, note; 94 Am. Decis., 106. It cannot be doubted there was evidence for the jury on this question.

No discussion of surface water seems necessary under the facts of this case; but since the subject has been referred to in argument, it may be well to say that the flood water of a river is not usually surface water, although spread out over the adjacent lands. Jones on Easements, sec. 729. The test is thus stated in 13 Am. & Eng. Ency., 687: "Whether the water from the overflow of streams is to be considered as still a part of the water course or to be treated as surface water, is the subject of diverse opinions; but the most satisfactory rule which has been evolved makes its character depend upon the configuration of the country and the relative position of the water after it has gone beyond the usual channel. If the flood water becomes severed from the main current or leaves the same never to return, and spreads out over the lower ground, it becomes surface water. But if it forms a continuous body with the water flowing in the ordinary channel, or if it departs from such channel presently to return, as by recession of the waters, it is to be regarded as still a part of the stream." Even if in this case the water be regarded as surface water, this could not avail defendant. Though one has the right to empty surface water into a natural stream flowing through the lands of his neighbor, he is not allowed to collect surface water by artificial means and throw it on the lands of another. *Brandenburg* v. *Seigler,* 62 S. C., 18, 39 S. E., 790.

For the reasons stated, we think the nonsuit was properly refused. The foregoing discussion disposes of the first,

second, third, fourth, fifth, thirteenth, fifteenth, twenty-first and twenty-sixth grounds of appeal.

Upon examination of the evidence it will be apparent that although the Court did exclude an answer to the question asked B. B. Williams, "To what extent are there erosions?" yet the witness subsequently gave a full account of the nature and extent of the erosions. The witness, F. H. Barber, was not allowed to testify as to the effects of freshets on the bottom lands along the same river in York County; but afterwards, having stated that he knew the effects of freshets not only in York County but all along the river, he was allowed to give in detail the results of his observations. This witness was asked the question, "Do you think the water was thrown on that land by the obstruction afforded by the piers?" Upon objection, he was not allowed to give his opinion. It had not been proven that the witness had any special knowledge of the effect on the water of such obstructions as the piers and cribs, or even that he was especially familiar with the river at the bridge. His opinion was, therefore, not admissible. The sixth, seventh and eighth exceptions are overruled.

As to the requests to charge, the presiding Judge said to the jury: "Now I have been requested by both sides to charge you certain requests, both for the plaintiffs and the defendant. You have heard these requests read. I have given you in my general charge what I consider to be the law in this case; and in so far as the requests, submitted by the plaintiffs and the defendant, are consistent with my general charge, I charge them to you, and those which are inconsistent and conflict with my general charge, I refuse to charge them to you." The defendant was entitled to have the presiding Judge charge or refuse its requests. Little benefit could come to defendant from having its requests submitted to the jury as they were. As the requests were not properly submitted, we must treat them as refused, and the defendant will be entitled to a new trial under the sixteenth exception, unless the

sound propositions of law embraced in defendant's requests, material to the issues, had already been so substantially covered by the charge that it is apparent no injury resulted from the refusal. In this view the charge and defendant's requests will be considered.

In considering the exceptions in which defendant complains, that the charge excluded from the jury the principle that the defendant would not be liable if the bridge was properly constructed and maintained, or if the water was necessarily diverted to the injury of plaintiffs, it is important to bear in mind that there were only two charges of negligence to which all the evidence on the subject was directed. These were negligent construction of the bridge, and negligently allowing the cribs to remain in the river. The jury, therefore, must necessarily have applied all that was said by the Court on the subject of negligence to these charges. The instructions on this subject were free from error, full and explicit. After stating clearly the only issues of negligence, the Circuit Judge said: "So your business is to determine from the evidence whether or not the defendant is guilty of the acts of negligence complained of; and whether or not these acts of negligence—if you find that said acts were negligent acts, and that the defendant was guilty of said acts of negligence, from the evidence—were the proximate causes of the injuries of which the plaintiffs complain." The jury were also charged that the plaintiffs could not have a verdict unless they had satisfied the minds of the jury by the preponderance of the evidence on all the material issues raised by the pleadings. The ninth, twelfth, seventeenth, eighteenth, nineteenth and twentieth exceptions, therefore, cannot be sustained.

It is further submitted the Circuit Judge was in error in charging that the burden of proof was on the defendant to establish its defense that the damage, if any, was due solely to unprecedented floods. It will be observed in the charge, the Court had already laid upon the plaintiffs the burden of proving their case, as alleged by a pre-

ponderance of the evidence.    The third paragraph of the answer alleging as a cause of damage "frequent and unusual high freshets," was regarded by the defendant, without objection by plaintiffs, as setting up the affirmative defense of floods so extraordinary that the prudent and careful could not be expected to anticipate them or provide against them. This being an affirmative defense, the burden was on the defendant to establish it.    The plaintiffs could not be required to overthrow it until it had been made out.    *Frost* v. *Berkeley*, 42 S. C., 402, 20 S. E., 280; *Ellis* v. *R. R. Co.*, 24 N. C., 138.

The charge to the effect that if the damage was produced by extraordinary freshets, but if it would not have occurred, notwithstanding the unprecedented floods, but for the negligence of the defendant, the defendant would still be liable, is supported by reason and by an unbroken line of authority. In addition to the familiar decisions in this State, the charge on this point was in accordance with the doctrine laid down in Thompson's Commentaries on the Law of Negligence and other authorities relied on by defendant.    There is no intimation in the charge that the railroad should be held to be a warrantor against injury arising from placing structures for its bridge in the river.    On the contrary, the jury were distinctly told only reasonable care and diligence could be required. We think from these observations it is apparent the tenth, eleventh, fourteenth, twenty-second, twenty-third and twenty-seventh exceptions cannot be sustained.

In the twenty-fourth exception, defendant insists the Circuit Judge erred in not charging the jury its requests to the effect that if the damage to plaintiffs' land resulted from hauling logs, and other causes not connected with the acts of negligence charged in the complaint, the plaintiffs could not recover.    The instruction was very clearly given to the jury that the plaintiffs must satisfy them the acts of the defendant *complained of* were negligent, and that *they* were the proximate causes of the damage alleged.    We think, for

this reason, no injury resulted to defendant from the refusal of this request. The same reasoning applies to the twenty-fifth exception, relating to the constructon of the temporary bridge.

The twenty-eighth exception is as follows: "Because his Honor refused to charge defendant's thirteenth request to charge, as follows, to wit: 'That plaintiffs cannot recover in this action for damages to growing crops on the land in question, which belonged to J. N. Jones.'" J. N. Jones was not a party to the action, and it is hardly conceivable that it was necessary to instruct the jury the plaintiffs could not recover for damage to property of a third party. Besides, it was made manifest when the testimony as to the crops was admitted, it was only for the purpose of showing the value of the land and the damage done to it.

Upon consideration of the whole case, we think the charge of the presiding Judge substantially covered the law applicable to the issues, and that the defendant was not prejudiced by the refusal of its requests to charge.

Inasmuch as the act of 1897, Civil Code, section 2041, was not construed by the Circuit Judge, and its interpretation is not necessary to the decision of the case, we express no opinion as to its effect.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE POPE. *I concur in the result.* The defendant was clearly liable for all damages arising from the "cribs" left in the stream. I am not so clear as to the "piers" of the bridge.