SOUTH CAROLINA STEAMBOAT CO. v. WILMINGTON, COLUMBIA AND AUGUSTA RAILROAD CO.

1. NUISANCE—REMEDIES—HIGHWAYS—INDICTMENT.—The remedy for the removal of an obstruction on a navigable inland river is by indictment, unless some individual can show *special* or *peculiar* damage, differing in kind to that to which all others in common with him are exposed.

2. NONSUIT—COMPLAINT.—The allegations in this complaint does not take the case out of the general rule, and it was error in the Circuit Judge not to grant the motion for nonsuit upon the ground that the complaint did not state facts sufficient to constitute a cause of action.

3. DAMAGES—CONTRACT.—Damages resulting from a breach of contract on the part of defendant to open its "draw" on the days of plaintiff's regular trips, would not come directly from the obstruction complained of, and, therefore, the allegations of such breach would not bring this case within the exception to the general rule.

4. MR. JUSTICE GARY, *dissenting*.

Before TOWNSEND, J., Marion, April, 1895.    Reversed.

This action was commenced in July, 1893, by service of following complaint:

The plaintiff, complaining of the defendant, alleges:

First. That the plaintiff is a corporation duly created by and existing under the laws of the State of South Carolina aforesaid, under the name of the South Carolina Steamboat Company.

Second. That the defendant is a corporation duly created by and existing under the laws of the State of South Carolina aforesaid, under the name of the Wilmington, Columbia and Augusta Railway Company.

Third. That the plaintiff has, for a large number of years

and under the provisions of its charter as a common carrier, constantly and without intermission run a line of steamers from the port of Georgetwon, up and along the Pee Dee River, and to all points on said river, for the purpose of transporting passengers, produce, manufactured goods, general merchandise and other freight, to and along the said river, and to and at the several stations used by the said plaintiff along the said river, for the receipt and delivery of such passengers, freight, and merchandise. That in the course of such employment the plaintiff has built and owns a large number of steamers, which are exclusively used for such transportation of freight and merchandise along the said Pee Dee River, the said steamers being of great value. That it was well known to the public generally, and to the defendant especially, that the plaintiff was engaged in this business. That, as a matter of fact, the plaintiff has for years been exchanging freight with the defendant from and for points on said river, both above and below the point where the railroad track and bridge of the defendant crosses the river.

Fourth. That by reason of such long and regularly continued line of boats so made by the plaintiff on the said Pee Dee River, the plaintiff had built up a large, valuable, and lucrative business in the transportation of freight and passengers to and between the said stations so used by it along the said river. That the value of said business depended and depends, to a very large extent, on the regularity of the trips made by the steamers of the plaintiff, and on the certainty with which parties living along the shores of the said river might and may calculate upon the arrival and departure of said steamers, as means for the transportation of freight and passengers. That it is, therefore, a matter of vital importance, and great value to the plaintiff, that the trips of the said steamers should not be interrupted, but that they should be made regularly and according to their established and advertised schedules.

Fifth. That the Pee Dee River is a navigable river, lying

and being in this State and partly in the county of Marion, and that the same has, for a number of years past, been actually navigated by this plaintiff by the use of its boats, as hereinbefore described.

Sixth. That the defendant, also a common carrier, is engaged in the business of running a railroad in this State, and that the said railroad crosses the said river at a point midway of the line of travel on said river used by the plaintiff with its steamers. That in order to cross the said river, the defendant has erected and maintained a bridge, which bridge is situated partly within the county of Marion, but that in order not to obstruct, but allow the free use of the said river by the plaintiff and others similarly situated, there had been placed in the said bridge a draw, which could be and was opened from time to time for the passage up and down the river of the steamers so owned by the plaintiff.

Seventh. That some time in the fall of 1892, the defendant desired, for its own advantage and to continue its own business, to do certain repairs on the said bridge. That in order to make such repairs, it was found necessary either to close the draw of said bridge, thereby stopping the use of the said river by this plaintiff and breaking up the schedule established by it by long continued usage, and causing it especial loss and damage, or else that the draw should be left open, thereby causing no inconvenience whatever to the plaintiff, but interfering with the use of the said bridge by the defendant as a means of passing over the said river. That it became, therefore, a question with the defendant whether, in order to effect the repairs which it desired, for its benefit to make on said bridge, it should break up and interrupt the business of this plaintiff carried on by it along the said river, and thereby cause it especial and great damage, or interrupt its own business carried on by it over the said bridge, to its own loss and damage.

Eighth. That the plaintiff and the defendant are and for years have been to a large extent competitors for the busi-

ness arising along the river and in the vicinity of the crossing of the same by the said bridge, and that it is, therefore, of importance to each, that their respective schedules shall be maintained, and a matter of special damage to the competitor that its schedule should be broken and interfered with, and the continuance of its regular services interrupted.

Ninth. That it was well known to the defendant that any stoppage of navigation on said river, by closing the draw of said bridge, would cause serious and special damage to the complainants. That about eight years previous, to the date hereinafter mentioned, repairs were deemed necessary on the said bridge by defendants, but before making the same and closing the draw therein, timely notice was given to and satisfactory arrangements made with the plaintiff to keep and maintain one of its steamers in the said river above the said bridge, in order not to interrupt the business of the plaintiff or cause it the loss and damage which would necessarily and especially be caused to it by closing the said bridge and interrupting its regular schedule and communication. And that a large and additional expense incident to and attendant upon such arrangement, and the maintaining of such extra boat above the bridge, was borne and paid by the defendant.

Tenth. That before actually beginning the said repairs in the said fall of the year 1892, the defendant notified this plaintiff that, in order to accommodate them both and cause damage to neither, it, the defendant, would arrange to open the channel of the said river, by opening the draw in the bridge, and thereby removing any and all obstruction to the free navigation thereof on the regular days used by the plaintiff for passing up and down the said river. That relying upon this assurance, the plaintiff did not, as it had intended to do, retain a boat above the bridge to carry on its business there, but allowed its boat then above the bridge to come down the river. But upon the return of the said steamer loaded with freight for points above the said bridge on the next regular day, according to its schedule for pass-

ing up the river, the plaintiff found, to its great surprise, that the defendant, disregarding its promises and assurances, had closed the said bridge, to its own advantage and to the special detriment and damage of the plaintiff, and declined, upon the demand of the plaintiff, to open the same or to allow the steamer of the plaintiff to pass through.

Eleventh. That in violation of the promise and undertaking of the defendant, and of the provisions of the laws of this State, the said bridge was unlawfully and illegally kept closed by the defendant from the 14th day of September, A. D. 1892, to the 12th day of October, A. D. 1892, to the special and peculiar damage and detriment of this plaintiff. That it was thereby prevented from making its trips, according to schedule time, over the river above the said bridge. That its business, created by long years of uninterrupted service, was broken in upon and seriously injured. That it was put to expense and suffered damage by reason of the fact that, assuming that the bridge would be kept open according to promise, it had received freight for stations above the said bridge, which, in consequence of this unlawful act of the defendant, it was prevented from delivering, and was also prevented from receiving freight from said stations for transportation down the said river, which it had contracted to transport. That thereby special and particular injury and damage was caused to this plaintiff.

Twelfth. That meanwhile, and during the closing of the said bridge, the defendant continued to use the same for the passage of its trains, thereby maintaining uninterruptedly and unbrokenly its transportation and its schedules of doing business. That business, which was properly to be done by this plaintiff, was, in consequence of such illegal act of the defendant, transferred to the defendant, to its great gain and advantage and the damage and loss of this plaintiff; and that the defendant, therefore, by such unlawful acts, to continue benefit to itself at the known and recognized loss of the defendant and damage to the plaintiff, as aforesaid—the defendant then and there well know-

ing the business in which the plaintiff was engaged, and that the action of the defendant would result in great, peculiar, and especial loss and damage of the plaintiff.

Thirteenth. That, by reason of said unlawful and wrongful acts, plaintiff has been prevented from carrying on its usual and ordinary business; has had its regular schedules interrupted; has been unable to transport freight contracted for by it and actually carried up to the point of the said obstruction; has been unable to transport freight downward, and has sustained loss and other great injury to its business, to its damage $5,000.

Wherefore the plaintiff demands judgment against the defendant in the sum of $5,000, and its costs in this action.

To this complaint the defendant interposed the following written demurrer:

I. That there is no allegation showing any direct damage resulting to the plaintiff from obstruction to the river that is special to it and not common to the public at large for which an action would lie.

II. That it appears on the face of the complaint that the alleged obstruction to it was temporary, and only for the purpose of making necessary repairs on the defendant's bridge across the river.

The demurrer was overruled, the case tried on defendant's answer, and verdict obtained for plaintiff for $3,000. Defendant appeals.

*Messrs. W. J. Montgomery, J. T. Barron, C. A. Woods,* and *Johnson & Johnson,* for appellants.

*Messrs. Smythe & Lee* and *Sellers & Sellers,* contra.

March 23, 1896. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. The plaintiff brings this action to recover damages, alleged to have been sustained by it by reason of the obstruction, by the defendant com-

pany, of the navigation of the Pee Dee River, alleged to be a navigable stream. Inasmuch as the primal and, as we think, controlling question, arises upon a demurrer to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action, it will be necessary for the reporter to embody in his report of the case a copy of the complaint which is set out in the "Case."

The first specification of deficiency in the complaint is thus stated: "The complaint does not allege any special or particular and direct injury to the plaintiff from the alleged obstruction to navigation on the Pee Dee River, for which an action will lie." The Pee Dee River, being a navigable stream, is a public highway. The Constitution of 1868, which was of force at the time the alleged cause of action in this case arose, and at the time the action was commenced, and at the time it was tried in the Circuit Court, in sec. 40, of art. I., expressly declares: "All navigable waters shall forever remain public highways;" and the same declaration is repeated in sec. 1 of art. VI. The same declaration is made in the present Constitution, in sec. 28 of art. I., and again in sec. 1 of art. XIV. There can be no doubt that an obstruction of any highway is a public nuisance, which, ordinarily, can only be redressed by indictment. As is said by Harper, J., in delivering the opinion of the court, in the leading case of *Carey* v. *Brooks*, 1 Hill, at page 367: "In general, the remedy for a nuisance on a highway is by indictment; and the case put Co. Lit., 56, where that is said to be the proper remedy, is like the present: 'If a ditch he made over thwart the highway, so that he cannot go.' In Bacon's Abridgement, Tit. Nuisance, D., it is said that common nuisances against the public are only punishable by indictment. 'But if, by such nuisances, the party suffer a particular damage, as if, by stopping up a highway with logs, &c., his horse throws him, by which he is wounded or hurt, an action lies.' It is added however, 'but if a highway is stopped that a man is delayed in his journey a little while, and by reason thereof he is dam-

nified or some important affair neglected, this is not such special damage for which an action on the case will lie; but a particular damage to maintain this action, ought to be direct and not consequential—as, for instance, the loss of his horse or some corporal hurt in falling into a trench on the highway,' &c., referring to Carth., 194." And Harper, J., adds: "This seems to be the settled law, founded on the inconvenience of allowing a separate action to every individual who suffers an inconvenience common to many." These remarks of that distinguished jurist were made in a case where the plaintiff had a raft of timber floating in the water above the obstruction complained of, which he had contracted, under a penalty, to deliver by a certain day in Hamburgh, and the plaintiff had employed hands to clear out the channel of the stream, at an expense of $125, and had been delayed in delivering the timber about one month by reason of the act of the defendant in obstructing the stream; and yet it was held that the plaintiff could not recover, because the damage complained of was not such as would justify the maintenance of a civil action. That case, *Carey* v. *Brooks*, was distinctly recognized and followed in the comparatively recent case of *Steamboat Co.* v. *Railway Co.*, 30 S. C., 539, where it was said that the true rule on the subject is: "That the injury must be particular—as several of the cases express it, 'special or peculiar'—must result directly from the obstruction, and not as a secondary consequence thereof, and must differ in kind, and not merely in extent or degree, from that which the general public sustains." A good illustration of this exception to the general rule may be found in the case of *Crouch* v. *Railway Company*, 21 S. C., 495, where a steamer, the "Silver Star," in attempting to pass through the draw of a bridge, erected by the railway company across a navigable stream, of insufficient width, struck against the timbers of the bridge and was injured.

This being the rule, the next inquiry is, whether there is any allegation in this complaint which brings this case

within the exception to the general rule, that the only remedy for a nuisance in obstructing a public highway is by indictment, and not by civil action. We do not think there is any such allegation. There is no allegation of any special or particular damages peculiar to the plaintiff and differing in kind from that to which all others, in common with the plaintiff, were exposed. All others, in common with the plaintiff, had a legal right to navigate this river, and any obstruction of that right violated their rights in the same way as the rights of plaintiff are alleged to have been violated. Even granting that the rights of plaintiff are alleged to have been violated *to a greater degree* than those of the general public, by reason of interference with the regular schedules which the plaintiff had established, and by reason of ,plaintiff being prevented from complying with its engagements to receive and deliver freight at points on the river above the obstruction, all other persons who chose to navigate that river were exposed to the very same kind of injury; and there is no allegation in the complaint that the plaintiff was the only person or corporation engaged in navigating that river, even if such an allegation would be of any avail; for the law secured to every person the right to the free navigation of that river whenever he chose to exercise such right. If the fact that the plaintiff, in *Carey* v. *Brooks*, was subject to a penalty for not delivering his timber according to his contract, did not bring that case within the exception to the rule, it seems to us impossible to find anything in the complaint which would bring this case within such exception.

Great stress is laid upon the allegations contained in the tenth paragraph of the complaint as to the arrangement there set ,forth between plaintiff and defendant, whereby, as alleged, the defendant agreed to leave open the draw in the bridge on the day of the regular trips of the boats of the plaintiff company, and the alleged violation of that promise or arrangement by the defendant company. But, in the first place, the present

action is not the proper mode of obtaining redress for the breach of a contract, and, in the second place, and what is more to the point, the damages resulting from the breach of such contract would not *result directly* from the obstruction complained of, and, therefore, would not bring this case within the exception to the general rule. Assuming all the allegations of the complaint to be true, as we must do under the demurrer, we do not think that the plaintiff has stated such facts as are necessary to the maintenance of a civil action for damages sustained by the obstruction of a public highway. It follows, therefore, that the Circuit Judge erred in overruling the demurrer. This being decisive of the case, all of the other questions presented become merely speculative, and hence need not be considered.

The judgment of this court is, that the judgment of the Circuit Court overruling the demurrer be reversed.

MR. JUSTICE GARY, *dissenting.* The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action in: "1st. That there is no allegation showing any direct damage to the plaintiff from obstruction to the river that is special to it and not common to the public at large, for which action would lie. 2d. That it appears on the face of the complaint that the alleged obstruction to it was temporary, and only for the purpose of making necessary repairs on the defendant's bridge across the river." The complaint contains allegations appropriate to two causes of action: *First*, a cause of action for damages arising from the obstruction of the navigable highway. *Second*, a cause of action for damages resulting from the violation of defendant's promise, which induced the action on the part of the plaintiff, as set forth in the tenth paragraph of the complaint. If the defendant, upon motion, had required the plaintiff to state the causes of action separately, we are of the opinion that a demurrer would properly have been sustained to the cause of action for damages arising from the obstruction of the navigable

highway; but a demurrer to the cause of action for damages resulting from the violation of defendant's promise, which induced action on the part of the plaintiff, could not properly have been sustained. When allegations appropriate to several causes of action are commingled in one complaint, and show the plaintiff entitled to *some* relief, then *demurrer* is not the proper remedy against any of the causes of action, which are thus commingled. *Cartin* v. *R. R. Co.*, 43 S. C., 221. This case is quite different from those relied upon by Mr. Chief Justice McIver, in delivering the opinion of the majority of the court.

These are, in brief, the reasons that cause me to dissent from the opinion of the majority of the Court.