**CAROLINA POWER & LIGHT CO. v. SOUTH CAROLINA PUBLIC SERVICE AUTHORITY et al.**

**SOUTH CAROLINA POWER CO. v. SAME.**

**SOUTH CAROLINA ELECTRIC & GAS CO. v. SAME.**

**Nos. 4252, 4253, 4254.**

Circuit Court of Appeals, Fourth Circuit.

Feb. 2, 1938.

William M. Rogers, of Birmingham, Ala., and Raymond T. Jackson, of Cleveland, Ohio (W. H. Weatherspoon, of Raleigh, N. C., Arthur R. Young, of Charleston, S. C., W. C. McLain, of Columbia, S. C., and A. J. Bowron, Jr., and Douglas Arant, both of Birmingham, Ala., on the brief), for appellants.

R. M. Jefferies, of Walterboro, S. C., and Paul Freund, Sp. Asst. to Atty. Gen. (W. J. McLeod, Jr., of Miami, Fla., James W. Morris, Asst. Atty. Gen., and Enoch E. El-

lison, Atty., Dept. of Justice, Carl F. Farbach, Robert E. Sher, and Joseph B. Hobbs, of Federal Emergency Administration of Public Works, all of Washington, D. C., on the brief), for appellees.

Oswald Ryan, Gen. Counsel, Federal Power Commission, of Washington, D. C. (Howard E. Wahrenbrock, Willard W. Gatchell, and William C. Koplovitz, all of Washington, D. C., on the brief), for Federal Power Commission, amicus curiae.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

These are appeals from an order denying an injunction in three consolidated cases instituted to enjoin the South Carolina Public Service Authority from constructing the Santee-Cooper Power-Navigation Project and Harold L. Ickes, Federal Administrator of Public Works, from making a loan and grant in aid thereof. The plaintiffs are hydroelectric power companies doing business in the state of South Carolina, one of them, the Carolina Power & Light Company, holding a license from the Federal Power Commission for a hydroelectric project which it operates on Big Pigeon river in Haywood county, N. C. The defendant South Carolina Public Service Authority is a body corporate created as a governmental agency of the state of South Carolina by Act No. 887 of the General Assembly of 1934, 38 St. at Large, p. 1507, and authorized thereby to construct a power and navigation project on the Santee and Cooper rivers and to divert the waters of the Santee into the Cooper for that purpose. A loan and grant aggregating $37,-500,000 in aid of the project has been approved by the Administrator of Public Works and an agreement to advance $6,-000,000 thereof to begin construction has been executed.

The project may be briefly described as follows: The Santee and Cooper are navigable rivers, the navigable portions of which lie wholly within the state of South Carolina. While they are navigable for a considerable distance, the navigation which they carry at this time is of an entirely negligible character. It is proposed by means of the project to provide an improved water route from Columbia to Charleston which will really be useful for purposes of navigation, and which will shorten the distance of water transportation between these cities from 246 to 145 miles, and at the same time to construct a hydroelectric power plant capable of producing annually 450,000,000 kwh of primary power and 200,000,000 kwh of secondary power. This is to be accomplished by constructing a diversion dam at Wilson's Landing in the Santee, about 87 miles above its mouth, and diverting the flow of that river, with the exception of about 500 c.f.s., through a canal into the Cooper. A power dam, with appropriate navigation locks, is to be constructed in the latter river at Pinopolis, and by the use of appropriate electrical generating machinery the potential energy of the impounded water is to be converted into electric current.

The result of the construction of the project will be to decrease the navigable capacity of the Santee below the diversion dam; but provision is made in the license granted therefor to take care of any future need of navigation in that part of the river by providing that the flow below the dam shall be increased by releasing such additional quantities of water as in the opinion of the Chief of Engineers of the War Department and the Secretary of War may be necessary for the proper operation of navigation facilities to be provided by the government. The project has been authorized by the South Carolina Legislature by Act 887 of the General Assembly of 1934, which has been upheld as constitutional by the Supreme Court of South Carolina. Clarke v. South Carolina Public Service Authority, 177 S.C. 427, 181 S.E. 481. It has been licensed also by the Federal Power Commission, after approval by the Chief of Engineers of the War Department and the Secretary of War. It appears also that Congress, after being advised as to the project and the earmarking of funds for the loan and grant in aid thereof, has appropriated additional funds for carrying it on. Public Resolution No. 47, 75th Cong., June 29, 1937, c. 401, § 205(e), 15 U.S.C.A. § 728 note. See also Senate Document 184, 74th Cong. 2d Sess. p. 11, and 81 Cong.Rec. 6054 and 81 Cong.Rec. 8304.

Injunctions are sought by plaintiffs to restrain not only the making or receiving of the federal loan and grant in aid of the project but also the construction of the project itself on the ground that it involves the impairment of the navigable capacity of a portion of a public waterway. As to this, the plaintiffs contend that both the license of the Federal Power Commission and the South Carolina statute authorizing the project are invalid, the former because

not authorized by a valid act of Congress, the latter because in contravention of the Constitution of the state. All of these matters are fully discussed in the able and exhaustive opinion of the court below, reported in D.C., 20 F.Supp. 854. We find it unnecessary to consider them here, since we think it clear, in the light of recent decisions of the Supreme Court, that plaintiffs have no standing in court to urge them as no right of plaintiffs will be infringed by the acts which it is sought to enjoin. Alabama Power Co. v. Ickes, 58 S.Ct. 300, 306, 82 L.Ed. ——; Duke Power Co. v. Greenwood County, 58 S.Ct. 306, 82 L.Ed. ——.

■ There can be no question, under the cases cited, but that plaintiffs have no standing to question the making of the loan and grant by the Administrator of Public Works, and we shall not discuss that matter further. We think it equally clear that they have no standing to question the legality of the construction by the defendant Authority of the prospective dams and waterways contemplated by the project. It is admitted that none of the plaintiffs has a franchise which is exclusive as against the Authority, that none of them has any prior or superior interest in the project or the license therefor, that none of them claims any injury or threat of injury to any special right or interest as owner of riparian lands which will be flooded, eroded or deprived of water, and that none of them has any interest in navigation on the river in question, as operator of vessels, owner of wharves, shipper or otherwise. The only interest which plaintiffs claim to have in the matter is that they will be damaged by reason of the fact that the defendant Authority will sell electric current in competition with them and that the construction of the project will enable it to produce the current. As plaintiffs have no exclusive franchise for the sale of electric current, however, no right of theirs will be invaded by competition on the part of the Authority or by any sales which it may make. So far as production of current is concerned, no right of theirs could possibly be infringed thereby, whether the obstruction and diversion of the Santee resulting in its production be lawful or not. Since, therefore, neither the sale of electric current nor the obstruction or diversion of the stream infringes any right of plaintiffs, it must follow that both together do not infringe such right. It has never yet been held, so far as we are aware, that the mere fact of competition entitles one whose rights are not invaded to enjoin the unlawful acts of a competitor. If, as held in the Alabama Power Case, plaintiffs have no ground to complain of an unlawful lending of money to enable a competitor to manufacture electric power to sell in competition with them, we fail to see how they can have ground of complaint because of the unlawful obstruction of a stream for that purpose.

In the case of New Orleans, M. & T. R. Co. v. Ellerman, 105 U.S. 166, 174, 26 L. Ed. 1015, cited as directly in point in the Alabama Power Case, it appeared that the owner of certain public wharves in New Orleans had brought suit to enjoin the leasing of competing wharves by a railroad company on the ground that such action on its part would be ultra vires. It was held that the plaintiff had no standing in court, merely because he would be injured by the competition which would result from the ultra vires leasing of the property, to question that action. The court in its opinion used the following language, quoted with approval in the Alabama Power Case: "The only injury of which he can be heard in a judicial tribunal to complain is the invasion of some legal or equitable right. If he asserts that the competition of the railroad company damages him, the answer is, that it does not abridge or impair any such right. If he alleges that the railroad company is acting beyond the warrant of the law, the answer is, that a violation of its charter does not of itself injuriously affect any of his rights. The company is not shown to owe him any duty which it has not performed." Applying this language to the case at bar we may say that the only injury of which plaintiffs can be heard in a judicial tribunal to complain is the invasion of some legal or equitable right. If they assert that the competition of the defendant Authority will damage them, the answer is that such competition will not abridge or impair any such right. If they allege that the Authority is violating the law in interfering with the navigability of the lower Santee, the answer again is that such violation does not injuriously affect any of their rights.

■ Much of the record and briefs is taken up with matters bearing upon the legality of a project which will result in the obstruction of a navigable stream, and all of the argument with respect to the validity of the license and the statute have to do with this question; but it is perfectly well settled

that any unlawful obstruction of a navigable stream or a public highway is a matter for the public authorities, not a matter of which private individuals may complain, unless they suffer some direct and special injury to their rights not common to the public. Sullivan v. American Mfg. Co., 4 Cir., 33 F.2d 690, 692; Radford Iron Co. v. Appalachian Electric Power Co., 4 Cir., 62 F.2d 940, 942; Mayor, etc., of Georgetown v. Alexandria Canal Co., 12 Pet. 91, 100, 9 L.Ed. 1012; Irwin v. Dixion, 9 How. 10, 26, 13 L.Ed. 25; Mississippi & Missouri R. Co. v. Ward, 2 Black 485, 17 L.Ed. 311; Lownsdale v. Gray's Harbor Boom Co., C. C., 117 F. 983; Fanning v. Stroman, 113 S. C. 495, 101 S.E. 861; Gray & Shealy v. Charleston & W. C. Ry. Co., 81 S.C. 370, 62 S.E. 442; South Carolina Steamboat Co. v. Wilmington, C. & A. R. Co., 46 S.C. 327, 24 S.E. 337, 33 L.R.A. 541, 57 Am.St. Rep. 688; Blanding v. Las Vegas, 52 Nev. 52, 280 P. 644, 68 A.L.R. 1273; 13 R.C.L. 227; 27 R.C.L. 1346; 45 C.J. 477, 478; 29 C.J. 627; notes, 4 L.R.A. 209, 59 L.R.A. 1, 81. And, with respect to obstruction of navigable waters, provision is expressly made by federal statute for the Attorney General of the United States to institute proceedings for the removal of such obstruction. 30 Stat. 1151, as amended 33 U.S.C.A. § 406; 41 Stat. 1076, 16 U.S.C.A. § 820. Whether the remedy thus provided is exclusive where private persons sustain direct and special injury as a result of the invasion of their rights, we need not decide. Cf. Minnesota v. Northern Securities Co., 194 U.S. 48, 70, 24 S.Ct. 598, 48 L.Ed. 870; Paine Lumber Co. v. Neal, 244 U.S. 459, 471, 37 S.Ct. 718, 61 L.Ed. 1256. It is sufficient for the decision here that, in the absence of such direct and special injury, suit by private persons on account of such obstruction may not be maintained.

■ And we do not think that the plaintiff Carolina Power & Light Company has any better standing to ask the relief prayed, because of the license which it holds from the Federal Power Commission. That license was for the construction of a power plant on Big Pigeon river in Haywood county, N. C., more than 200 miles from the Santee-Cooper project and on an entirely different watershed. It merely licensed the construction of a power project in the river in question subject to the provisions and limitations of the Water Power Act, as amended, 16 U.S.C.A. §§ 791a–823, and did not purport to grant to the licensee any sort of license, exclusive or otherwise, for the sale of electric power. The idea that the mere granting of such a license should give the licensee standing to enjoin the unlawful obstruction by its competitors of other public waters in which it is not otherwise concerned, is one for which we can see no support in law or in reason. Plaintiffs rely upon the case of Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483; but the extent of the holding there was that the holder of a nonexclusive franchise was entitled to enjoin the competition of one who was subject to but did not comply with the franchise requirements of the same statute. The rationale of the decision is that a state statute regulating a business affected with a public interest and requiring a determination of public convenience and necessity creates a quasi monopoly for those engaged therein and gives them a right to enjoin competition by those who have not complied with its provisions. In distinguishing that case in the Alabama Power Case, supra, the Supreme Court said of it: "Appellant there owned a cotton-ginning business in the city of Durant, Okl., for the operation of which he had a license from the Corporation Commission. The law of Oklahoma, Comp.Laws 1921, § 3713 (17 Okl.St.Ann. § 42), provided that no gin should be operated without a license from the commission, which could be obtained only upon specified conditions. We held that such a license was a franchise constituting a property right within the protection of the Fourteenth Amendment; and that while the acquisition of the franchise did not preclude the state from making similar valid grants to others, it was exclusive against an attempt to operate a competing gin without a permit or under a void permit. The Durant Co-operative Gin Company sought to obtain a permit from the commission which, for reasons stated in our opinion, we held would be void and a clear invasion of Frost's property rights. We concluded that a legal right of Frost to be free from such competition would be invaded by one not having a valid franchise to compete, and sustained Frost's right to an injunction against the commission and the Durant company. See Corporation Commission v. Lowe, 281 U.S 431, 435, 50 S.Ct. 397, 398, 74 L.Ed. 945. The difference between the Frost Case and this is fundamental; for the competition contemplated there was unlawful while that of the municipalities contemplated here is entirely lawful."

In the case at bar the competition which the defendant Authority will afford by the sale of electric current is unquestionably lawful; and in no aspect of the case is anything said to be unlawful except the obstruction of the Santee and the procuring of the loan and grant, which are not matters of competition at all. If defendant Authority were attempting to interfere with the matters covered by the Carolina Power & Light Company's license, as by attempting to interfere with the flow of Big Pigeon river, a case for injunctive relief might well be presented; but certainly no such case is made by the selling of electric current in competition with the licensee, when the license is merely one for the damming of a river and does not purport to grant a franchise of any sort for the sale of electric current. The provisions of the Water Power Act giving the Commission the right to regulate rates in the absence of regulation by a state commission and to require the development of the project to meet the needs of the public, are provisions designed to protect the public against exorbitant rates and the withholding of natural resources from profitable use, not provisions granting to the licensee any sort of monopoly or franchise for the sale of electric current or immunity from any sort of competition in the sale thereof.

Other cases relied upon by plaintiff, viz., City of Campbell v. Arkansas-Missouri Power Co., 8 Cir., 55 F.2d 560; Iowa Southern Utilities Co. v. Cassill, 8 Cir., 69 F.2d 703; Arkansas-Missouri Power Co. v. Kennett, 8 Cir., 78 F.2d 911, and Gallardo v. Porto Rico Ry., L. & P. Co., 1 Cir., 18 F.2d 918, are readily distinguishable, as they merely hold that one who has a nonexclusive franchise is entitled to protection against the illegal acts of others "who propose to exercise the privilege conferred by the franchise." Without deciding whether or not this is a proper extension of the doctrine of the Frost Case, as to which much doubt may well be entertained, it is clear that such extension of that doctrine does not help the position of the Carolina Power & Light Company, since the license which it holds from the Power Commission does not confer upon it the privilege of selling electric current in the territory which it serves, but merely of constructing a power project in Big Pigeon river, a privilege which none of the defendants is proposing to exercise.

Plaintiffs contend that they have standing as taxpayers of the state of South Carolina to maintain the suit, particularly in so far as it relates to the obstruction of one of the navigable waters of the state. It is clear, of course, that the fact that they pay taxes to that state can give them no right to complain of the making of the federal loan and grant. City of Allegan v. Consumers' Power. Co., 6 Cir., 71 F.2d 477. And we think it equally clear that that fact gives them no standing to complain that the obstruction of a navigable stream is in violation of a federal statute. And, as noted above, it is settled law that, in the absence of a showing of direct and special injury resulting therefrom, one may not sue to enjoin the obstruction of a navigable stream; and this rule is well established in South Carolina. South Carolina Steamboat Co. v. Wilmington, C. & A. R. Co., supra, 46 S.C. 327, 24 S.E. 337, 33 L.R.A. 541, 57 Am.St.Rep. 688; South Carolina Steam-Boat Co. v. South Carolina R. Co., 30 S.C. 539, 9 S.E. 650, 4 L.R.A. 209, 14 Am.St.Rep. 923. And the fact that plaintiffs are taxpayers does not give them any special right in the stream which will be invaded by such obstruction; and they fall within the rule that one may not sue, merely because he is a taxpayer, to enjoin the obstruction of a public highway. Blanding v. Las Vegas, supra, 52 Nev. 52, 280 P. 644, 68 A.L.R. 1273, and note at page 1297.

Plaintiffs rely upon Clarke v. South Carolina Public Service Authority, supra, 177 S.C. 427, 181 S.E. 481, as establishing the right of a taxpayer under the South Carolina practice to sue in such a case as we have here. But while federal courts of equity look to the law of the state for the ascertainment of rights of a substantive character, in matters of practice they are not governed by state law. Cf. Henrietta Mills v. Rutherford County, 281 U.S. 121, 127, 50 S.Ct. 270, 272, 74 L.Ed. 737. If, however, we could look to the state practice, it is clear that the right of plaintiffs as taxpayers to maintain this suit is precluded by the decision in the Clarke Case, which was another taxpayer's suit to enjoin the same project. Under the law of South Carolina the judgment therein was an estoppel against another suit by a taxpayer asking the same relief, not only as to the questions actually raised and decided, but also as to all other questions which could properly have been raised and decided there-

526

in. Davis v. Town of West Greenville, 147 S.C. 448, 145 S.E. 193; State ex rel. Brown v. Chester & L. N. G. R. Co., 13 S.C. 290. And this is the general law. See Eaton v. Board of Trustees, 184 N.C. 471, 114 S.E. 689; Greenberg v. Chicago, 256 Ill. 213, 99 N.E. 1039, 49 L.R.A., N.S., 108, and note; Ashton v. Rochester, 133 N.Y. 187, 30 N.E. 965, 31 N.E. 334, 28 Am.St.Rep. 619; McIntosh v. City of Pittsburg, C.C., 112 F. 705, 707; Stevens v. Shull, 179 Ark. 766, 19 S.W.2d 1018, 64 A.L.R. 1258; notes, 20 A.L.R. 1133, 1134, 64 A.L.R. 1262. It is clear, therefore, that with respect to questions which plaintiffs might raise in their capacity as taxpayers of the state, they are concluded by the decision of the Supreme Court of South Carolina in the Clarke Case.

For the reasons stated, the decrees appealed from will be affirmed. While the question of the right of plaintiff to maintain the suit is frequently treated as going to the question of jurisdiction, it goes, in reality, to the right of plaintiff to relief, rather than to the jurisdiction of the court to afford it. Greenwood County v. Duke Power Co., 4 Cir., 81 F.2d 986, 999.

Affirmed.