**L. SINGER & SONS et al. v. UNION PAC. R. CO.**
**KANSAS CITY, MO., v. L. SINGER & SONS et al.**
**Nos. 11480, 11489.**

Circuit Court of Appeals, Eighth Circuit.
Feb. 7, 1940.

STONE, Circuit Judge, dissenting.

Ruby D. Garrett, of Kansas City, Mo. (Fred Ruark and Spurgeon L. Smithson, both of Kansas City, Mo., on the brief) for appellants in case No. 11480.

Henry N. Ess, of Kansas City, Mo. (T. W. Bockes, of Omaha, Neb., and Watson, Ess, Groner, Barnett & Whittaker, of Kansas City, Mo., on the brief), for appellee in case No. 11480.

Sam. C. Blair, City Counselor, and Marcy K. Brown, Jr., Asst. City Counselor, both of Kansas City, Mo., for appellant in case No. 11489.

T. W. Bockes, of Omaha, Neb., and Henry N. Ess and Watson, Ess, Groner, Barnett & Whittaker, all of Kansas City, Mo., for appellee Union Pac. R. Co. in case No. 11489.

Before STONE, GARDNER, and SANBORN, Circuit Judges.

SANBORN, Circuit Judge.

The suit (No. 11480) which gives rise to these appeals was brought by certain commission merchants of Kansas City, Missouri, to enjoin the Union Pacific Railroad Company from constructing what is alleged to be an extension of its lines of railway in Kansas City, Kansas, until such time as it has procured a certificate of convenience and necessity from the Interstate Commerce Commission covering such construction, as required by § 402, par. (18), of the Transportation Act of 1920, c. 91, 41 Stat. 456, 477, 49 U.S.C. § 1, par. (18), 49 U.S.C.A. § 1(18). Kansas City, Missouri, sought leave to intervene. The railroad company filed an answer in which, among other things, it (1) denied jurisdiction; (2) asserted that the plaintiffs were not "parties in interest" within the meaning of § 402, par. (20), of the Transportation Act, c. 91, 41 Stat. 456, 478, 49 U.S.C. § 1, par. (20), 49 U.S.C.A. § 1(20); and (3) asserted that the complaint failed to "state a claim against defendant upon which relief can be granted".[1] Thereafter the defendant railroad company applied for a hearing upon these defenses before trial.[2] The District Court heard its application together with the motion of Kansas City, Missouri, for leave to intervene. The court ruled that it had jurisdiction of the suit, but that the plaintiffs were not "parties in interest" and hence could not maintain it, and that the complaint failed to state a claim upon which relief could be granted. It also ruled that the City was not a "party in interest".[3] It entered a decree dismissing the complaint and denying intervention. From this decree these appeals are taken.

The appeals challenge (1) the action of the court in considering in advance of trial the defenses sustained; (2) the ruling that the plaintiffs and the City are not "parties in interest"; and (3) the ruling that the complaint fails to state a claim upon which relief can be granted.

We think, that if it conclusively appears from the complaint filed by the plaintiffs and the complaint in intervention tendered by the City that the plaintiffs and the City are without capacity to maintain the suit and that therefore no relief could be afforded them, the court below was justified in entering a decree of dismissal in advance of trial. See General Investment Co. v. New York Central R. Co., 271 U.S. 228, 230, 46 S.Ct. 496, 70 L.Ed. 920; Carolina Power & Light Co. v. South Carolina Public Service Authority, 4 Cir., 94 F.2d 520, 526; Leimer v. State Mutual Life Assurance Co., 8 Cir., 108 F.2d 302, opinion filed January 5, 1940.

The vital question in these cases is whether the plaintiffs and the City are "parties in interest" within the meaning of paragraph (20), § 402 of the Transportation Act, which provides: "Any construction [of an extension] * * * contrary to the provisions of this paragraph or of paragraph (18) or (19) of this section may be enjoined by any court of competent jurisdiction at the suit of the United States, the commission [In-

---

[1] Rules of Civil Procedure for the District Courts of the United States, Rule 12(b)(6), 28 U.S.C.A. following section 723c.

[2] Ibid., Rule 12(d).

[3] 26 F.Supp. 721.

terstate Commerce Commission], any commission or regulating body of the State or States affected, or any party in interest; * * *."

The complaint of the plaintiffs shows that they are commission merchants doing business on the Kansas City, Missouri, produce market, an old and well-established market which adequately serves the consuming public in its vicinity and receives produce from, and ships produce to, other states; that Kansas City, Missouri, is now engaged in constructing new market buildings for this market at a cost of about $500,000; that the market has suitable and adequate transportation facilities of all kinds; that the adjoining city of Kansas City, Kansas, proposes to build and is building a "Food Terminal" or produce market on a tract of land which it owns, at a cost of about $4,000,000, of which $1,710,000 is a grant from the Public Works Administration of the United States, and that the balance of the necessary funds will be procured by a sale of the City's bonds to the defendant railroad company; that the defendant proposes, at an expense of some $500,000, to furnish trackage to serve this Kansas City, Kansas, market; that this trackage constitutes an extension of the defendant's lines of railroad, for the construction of which it has procured no certificate of convenience and necessity from the Interstate Commerce Commission as required by law; that the construction and operation of the proposed extension in Kansas City, Kansas, will adversely affect and will destroy the business and properties of the plaintiffs and the large investments which they have made in and adjacent to the Kansas City, Missouri, produce market; that it will create an unnecessary and uncalled for rival market at an inconvenient place without creating any more produce to be handled or any more customers to be served; that it will result in the unnecessary duplication of railroad facilities at a cost of $500,000 without increasing the amount of freight to be handled; that it will divert traffic from other railroads which are now adequately handling the traffic to the Kansas City, Missouri, produce market, and will cause destructive competition between the defendant and other rail-

roads and will cause a wasteful and needless expenditure of money by the defendant; that "for each and all of the reasons aforesaid, the construction and operation, or the construction, or the operation of the said extension or extensions of railroad by the defendant to said proposed produce market in Kansas City, Kansas, will directly and adversely affect the property interests of the plaintiffs and the public generally by bringing about a material change in the transportation situation, and will constitute an unnecessary burden upon interstate commerce directly and adversely affecting the welfare of plaintiffs and the public interest."

It is obvious that the only basis for the plaintiffs' claim that the alleged extension of the lines of the defendant to the Kansas City, Kansas, market will particularly injure them is that they do business upon the Kansas City, Missouri, market, and that if the proposed rival market in Kansas City, Kansas, functions, it will divert business from the market upon which they operate and will thus hurt them, their business, and their investments in Kansas City, Missouri, and that, since the proposed extension of its tracks by the defendant is necessary to enable the rival market to function, such extension will therefore injure the plaintiffs. It seems equally obvious that, except for the fact that the proposed extension is essential to the operation of the rival market in Kansas, it could not possibly have any direct or immediate effect upon the plaintiffs, their property or their business in Missouri, other than the effect which a wasteful expenditure by the defendant of its money would have upon the public generally. The proximate cause of the injury to the plaintiffs will be the competition created by the construction and operation of the rival market, and not the construction or operation of the transportation facilities furnished to it by the defendant or by others engaged in the transportation business.

It is the plaintiffs' contention that any one whose welfare is adversely affected or threatened by the unauthorized extension of a railroad is a "party in interest" who may maintain such a suit as this.[4] The defendant, on the other hand, contends broadly that no one is a "party in interest" who

---

[4] The plaintiffs rely upon: Western Pacific California R. Co. v. Southern Pacific Co., 284 U.S. 47, 52 S.Ct. 56, 76 L.Ed. 160; Detroit & M. R. Co. v. Boyne City, G. & A. R. Co., D.C., 286 F. 540; Claiborne-Annapolis Ferry Co. v. United States, 285 U.S. 382, 52 S.Ct. 440, 76 L. Ed. 808.

cannot point to the violation of some legal duty owing by the railroad to him.[5]

We concern ourselves only with the question whether the plaintiffs and Kansas City, Missouri, are "parties in interest" within the meaning of the statute authorizing "any party in interest" to maintain such a suit. This question, we think, is to be determined from the language of the Supreme Court of the United States in Western Pacific California Railroad Co. v. Southern Pacific Co., 284 U.S. 47, 52 S.Ct. 56, 76 L.Ed. 160, where the question was whether a railroad corporation without a railroad, but which had located its proposed line and had applied for authority to build it, was a "party in interest" within the meaning of the Transportation Act so that it might maintain a suit to enjoin an unauthorized extension into the territory which its proposed line was intended to serve. The Court, after quoting from Texas & Pacific R. Co. v. Gulf, Colorado & Santa Fe R. Co., 270 U.S. 266, 277, 46 S.Ct. 263, 70 L.Ed 578, said (284 U.S. at page 51, 52 S.Ct. at page 57, 76 L.Ed. 160):

"The Texas & Pacific Railway sought to prevent an unauthorized competitor from building an extension into territory already served by it. Prior to the statute, it could not have maintained such a suit, since the competitor's proposed action did not threaten interference with any legal right. No carrier could then demand exemption from honest competition.

"If, as the court below seems to have assumed, a 'party in interest' must possess some clear legal right for which it might ask protection under the rules commonly accepted by courts of equity, the paragraphs under consideration would not materially aid the Congressional plan for promoting transportation. On the other hand, there was no purpose to permit any individual so inclined to institute such a proceeding. The complainant must possess something more than a common concern for obedience to law. See Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078. It will suffice, we think, if the bill discloses that some definite legal right possessed by complainant is seriously threatened, or that the unauthorized and therefore unlawful action of the defendant carrier may *directly* and *adversely* affect the complainant's welfare by bringing about some material change in the transportation situation. Here, the petitioner was peculiarly concerned; its own welfare was seriously threatened. It alleged the beginning of an unlawful undertaking by a carrier which might prove deleterious to it as well as to the public interest in securing and maintaining proper railroad service without undue loss. It relied upon the procedure prescribed by the statute to secure an orderly hearing and proper determination of the matter. The disclosures of the bill were enough to show that the respondent's intended action might *directly* and seriously affect the project which complainant was undertaking in good faith. There was enough to give the latter the standing of a 'party in interest' within intendment of the act." [Emphasis ours.]

The plaintiffs have no definite legal right which is threatened. They are, however, persons whose welfare may be adversely affected by the bringing about of a material change in the transportation situation, in the sense that the extension proposed by the defendant, if built and operated, will enable a competitive market to function to their detriment. In that sense, we think it may safely be said that the proposed extension of defendant's lines may adversely affect the plaintiffs' welfare. We are of the opinion, however, that their complaint discloses that their welfare cannot be directly, but only indirectly and consequentially, affected by the proposed extension. They are not in competition with the defendant. They are not engaged in transportation business. Their only pe-

5 The defendant relies upon: Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S. Ct. 300, 82 L.Ed. 374; United States ex rel. New York Warehouse, Wharf & Terminal Ass'n v. Dern, 63 App.D.C. 28, 68 F.2d 773; Moffat Tunnel League v. United States, 289 U.S. 113, 53 S.Ct. 543, 77 L.Ed. 1069; Edward Hines Yellow Pine Trustees v. United States, 263 U.S. 143, 44 S.Ct. 72, 68 L.Ed. 216; Carolina Power & Light Co. v. South Carolina Public Service Authority, 4 Cir., 94 F.2d 520; West Tennessee Power & Light Co. v. City of Jackson, 6 Cir., 97 F.2d 979; Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543; New Orleans, M. & T. Railroad Co. v. Ellerman, 105 U.S. 166, 26 L.Ed. 1015; Interstate Commerce Commission v. Chicago, R. I. & P. R. Co., 218 U.S. 88, 30 S.Ct. 651, 54 L.Ed. 946; St. Louis Southwestern Railway Co. v. Missouri Pacific R. Co., 289 U.S. 76, 53 S.Ct. 516, 77 L.Ed. 1042.

culiar interest in that business is in the effect which changes in it may have upon the market where they do business and upon rival markets now or hereafter established in the territory which the plaintiffs serve.

A contention somewhat analogous to that here presented by the plaintiffs was ruled upon by this Court in Arkansas-Missouri Power Co. v. City of Kennett, 78 F.2d 911, in which the power company sought to attack the validity of a loan and grant made by the United States to the City of Kennett to enable it to enter into competition with the power company. We said (78 F.2d at page 914): "The court below was of the opinion that the power company was in no position to question the power of the federal government to loan or give money to the city of Kennett. We are in accord. The United States is not proposing to become a competitor of the power company. It will have no right, title, or interest in the plant when completed and nothing to do with operating it. The destruction of the power company's property will come about by reason of the city's operation of the plant when erected. The position of the United States is that of a lender of money, a buyer of bonds, and a giver of gifts. True, the money procured from the government will enable the city to build the plant, and, if the city builds the plant, it will no doubt operate it, and when it does operate the plant the city will take the customers of the power company, and the company's property in Kennett will become worthless or greatly impaired in value. We know of no rule of law, however, which permits one indirectly hurt, no matter how seriously, by a government expenditure, to question the power of the government to make it. In fact, the rule is to the contrary. Commonwealth of Massachusetts v. Mellon, Secretary of the Treasury, et al., 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078; City of Allegan, Mich. v. Consumers' Power Co., 6 [Cir.], 71 F.2d 477 (certiorari denied, 293 U.S. 586, 55 S. S.Ct. 100, 79 L.Ed. [681]). It is true that in the cases cited the plaintiffs relied upon their status as taxpayers exclusively, while in this case the plaintiff relies, in addition, upon the injury which will be done to its property by municipal competition. That injury, however, is so far as the government is concerned, clearly consequential and indirect, as we have pointed out. See, also, Missouri Utilities Co. v. City of California, Mo., et al., (D.C.,) 8 F.Supp. 454, 465." See, also, Moffat Tunnel League v. United States, 289 U.S. 113, 119-121, 53 S.Ct. 543, 77 L.Ed. 1069; Pittsburgh & West Virginia R. Co. v. United States, 281 U.S. 479, 487, 50 S.Ct. 378, 74 L.Ed 980; People v. Walsh, 343 Ill. 136, 174 N.E. 881, 882.

The complaint in intervention tendered by Kansas City, Missouri, shows that with respect to the proposed extension it stands in substantially the same position as the plaintiffs. Its market place will be injured by the establishment of the rival market, and taxable values in the City will decline with a resulting loss of revenue. The proposed extension, however, can only be the remote cause of the injuries which the City fears.

We realize that the meaning of the words "party in interest" as used in § 402, paragraph (20), of the Transportation Act might be expanded so as to include parties standing in the situation of these plaintiffs and of Kansas City, Missouri. We think that as yet persons in their situation have not been regarded as being "parties in interest" who may maintain a suit such as this. We conclude that the statute is not to be so liberally construed as to enable those who fear adverse effects upon their business from the establishment of competitive enterprises requiring transportation facilities, to maintain suits to enjoin railroads from constructing what are claimed to be unauthorized extensions to serve such enterprises.

The decree is affirmed.

STONE, Circuit Judge (dissenting).

I am unable to concur in the able opinion of the majority on the issue as to whether plaintiffs and the proposed intervener are "parties in interest" within the meaning of the Act (U.S.C.A. Title 49, Section 1, par. (20). I am constrained to state the grounds for such dissent not only by the need for justifying a dissent from the views of Judges for whose judgment I have the highest respect, but also by what I conceive to be the importance of this decision to the efficient operation of the provision of this Act requiring certificates of convenience and necessity before extensions of railway trackage are permissible (U.S.C.A. Title 49, Section 1, par. (18).

The Transportation Act was designed to place the interstate railroads "more completely than ever under the fostering guardianship and control of the [Interstate Commerce] Commission" by placing under its supervision various specified matters,

among which is construction or abandonment of lines Railroad Commission of State of California v. Southern Pacific Co., 264 U.S. 331, 341-342, 44 S.Ct. 376, 68 L.Ed. 713; Dayton-Goosecreek R. Co. v. United States, 263 U.S. 456, 478, 44 S.Ct. 169, 68 L.Ed. 388, 33 A.L.R. 472. The importance of this control over extensions or abandonments to realization of the purposes of the Act is obvious.

As to extension or abandonment of lines, this control of the Commission is exercised solely through the Act requirement of certificates of convenience and necessity before such extensions or abandonments are made. The means provided by the Act to force compliance with this control is by giving to "any party in interest" the right to prevent, by injunction, such extension or abandonment until the necessary certificate is obtained. This is the "only remedy" and such remedy is "both affirmative and complete." Texas & Pac. R. Co. v. Gulf, Colorado & Santa Fe R. Co., 270 U.S. 266, 273, 46 S.Ct. 263, 264, 70 L.Ed. 578. Since the above is the only method of protecting and making fully effective this control of the Commission, the importance of any definition of "party in interest"—those who may initiate such procedure—is evident.

As shown by the petition, the "interest" of the plaintiffs is as follows. Defendant contemplates the construction of certain trackage in Kansas City, Kansas, which plaintiffs allege is an "extension", within the meaning of the Act. This trackage is to serve a large produce market which is to be constructed by Kansas City, Kansas. Plaintiffs are produce merchants who own or have places of business in connection with a long established similar market in Kansas City, Missouri, which has long adequately served the area made up of and surrounding the two cities. The construction and operation of the proposed trackage would have the injurious effects following: (a) Destroy or seriously and adversely affect the businesses, properties and large financial investments of plaintiffs in and adjacent to the existing Kansas City, Missouri, produce market; (b) create a rival market far removed from the center of population and inconvenient to a great majority of the citizens of the two cities; (c) create a rival market with no increase of produce business when the present market is entirely adequate to serve the entire community; (d) result in an unnecessary duplication of railroad facilities at a cost of over $500,000 with no increase in freight to be handled; (e) divert traffic to defendant from other railroads which are now adequately handling the traffic to the existing produce market; (f) cause destructive competition between railroads operating in the vicinity; and (g) result in wasteful and needless expenditures by defendant.

No present purpose is served by examining, separately, the just stated allegations as to injury. It is enough to test the issue of "interest" by the position of the plaintiffs to this extension as alleged in the petition. That position is that the proposed trackage will divert business from a long established market to the financial loss of plaintiffs and that such diversion will serve no purpose useful to the communities affected thereby. The question is whether "party in interest" (within the meaning of this Act) includes those who will suffer financial loss by a change in conditions which will be brought about by the construction and operation of an extension of a railroad for which no certificate has been obtained under the Act?

Plaintiffs contend broadly that any one whose "welfare" is adversely affected by a railroad extension is a "party in interest". Defendant contends broadly that "party in interest" is confined to one asserting "the violation of a legal duty owing by the defendant [railroad] to him" and that damage which springs solely from a change in competitive conditions brought about by an "extension" gives rise to no legal duty but is damnum absque injuria.

I think both contentions are, broadly, incorrect and that the meaning of the Act is to be found between these extremes.

The contention of defendant is that the Act intended that only such persons might seek this injunctive relief as could show a violation of some legal duty owing to them by the railroad proposing the extension. This contention is destroyed by the language, construing the provision of the Act, in Western Pacific California Railroad Co. v. Southern Pacific Co., 284 U.S. 47, 51, 52, 52 S.Ct. 56, 57, 76 L.Ed. 160, where, after quoting from Texas & Pacific R. Co. v. Gulf, Colorado & Santa Fe R. Co., 270 U.S. 266, 277, 46 S.Ct. 263, 70 L.Ed. 578, the Court said:

"The Texas & Pacific Railway sought to prevent an unauthorized competitor from building an extension into territory already served by it. Prior to the statute, it could not have maintained such a suit, since the competitor's proposed action did not threat-

en interference with any legal right. No carrier could then demand exemption from honest competition.

"If, as the court below seems to have assumed, a 'party in interest' must possess some clear legal right for which it might ask protection under the rules commonly accepted by courts of equity, the paragraphs under consideration would not materially aid the Congressional plan for promoting transportation. On the other hand, there was no purpose to permit any individual so inclined to institute such a proceeding. The complainant must possess something more than a common concern for obedience to law. See Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078. It will suffice, we think, if the bill discloses that some definite legal right possessed by complainant is seriously threatened, or that the unauthorized and therefore unlawful action of the defendant carrier may directly and adversely affect the complainant's welfare by bringing about some material change in the transportation situation. Here, the petitioner was peculiarly concerned; its own welfare was seriously threatened. It alleged the beginning of an unlawful undertaking by a carrier which might prove deleterious to it as well as to the public interest in securing and maintaining proper railroad service without undue loss. It relied upon the procedure prescribed by the statute to secure an orderly hearing and proper determination of the matter. The disclosures of the bill were enough to show that the respondent's intended action might directly and seriously affect the project which complainant was undertaking in good faith. There was enough to give the latter the standing of a 'party in interest' within intendment of the act.'"

This quotation not only carries the meaning of "party in interest" beyond the protection of legal rights but expressly recognizes that injury through competition—not theretofore subject to legal remedy—might be, and in that case was, sufficient basis to constitute the one so injured such a "party in interest". The decisions cited by appellee to the effect that equity affords no remedy for injuries arising solely from competitive conditions or changes therein are inapplicable. The matter here is one of statutory construction and not one of general law.

The contention of appellant that any one whose "welfare" is affected by a track "ex-tension" is a "party in interest" seems rather too broad. The above quotation from the Western Pacific California case contains the generally stated limitations of the meaning of the statutory term as well as an application of such definition to a set of facts useful in the case before us. The Court states two general classes of persons as within the definition, to-wit, those having some definite legal right seriously threatened or those whose "welfare" "may be directly and adversely" affected "by bringing about some material change in the transportation situation."

The latter class was involved in that case as it is in the case before us. The main, apparently the only, direct and adverse effect upon the plaintiff in that case was that of competition through the trackage contemplated by the Southern Pacific (284 U.S. at page 52, 52 S.Ct. 56, 76 L.Ed. 160). This effect was, obviously, a business—a financial—effect. Such an effect was "something more than a common concern for obedience to law". Western Pacific California case, supra, 284 U.S. at p. 51, 52 S.Ct. at page 57, 76 L.Ed. 160. Without attempting further to define that "welfare" which, if "directly and adversely" affected, brings one within the Act, it is sufficient for our present purposes that direct financial loss is within the Act. Such financial loss is clearly stated in this petition and might naturally result from the situation pleaded therein. I think the plaintiffs stated enough in the petition to give them the standing of a "party in interest" within the intendment of the Act.

As to appellant Kansas City, Missouri, the allegation of financial loss is in taxes through diminution of real property values and possible movement of the present produce merchants from the city to the vicinity of the contemplated market in Kansas City, Kansas. Also loss through the situation that it is now erecting a new market structure at considerable cost. It seems to me these allegations are of sufficient definite and adverse financial effect to bring the city within the statute.

I cannot agree that the proposed extension by defendant does not directly affect complainants and intervener. It is quite evident from the complaint and from the offered intervening petition (1) that plaintiffs and intervener will be financially affected by the proposed rival market; and (2) that such rival market cannot come into

existence without this extension by defendant.

It is true that the law furnishes no protection against competition of a rival market. It is equally true that the Act places it in the power of the Commission to refuse a certificate for an extension where the natural and intended effect of such extension is to create a rival market which will serve *no useful public purpose* and which will result in direct financial loss to an existing market. Such effects certainly "affect the complainant's welfare by bringing about some material change in the transportation situation", as stated in the foregoing quotation from the Western Pacific California case.[1]

---

[1] In presenting this bill, Chairman Esch of the House Committee on Interstate and Foreign Commerce said: "Before a road or an extension thereof can be built it must get what is called in this bill a certificate of convenience or necessity from the commission as a condition precedent to the building of a single rod of the extension or of the new line. That means that the commission must first investigate the situation. It must first consult the communities that would be connected or would be located on the proposed line. It must consult the *shipping interests and the producing interests and all other interests that might be involved* and then determine whether or not it should issue a certificate of convenience and necessity." (Italics supplied.)